J-S40038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOHN VIDRA, | : | |
| | : | |
| Appellant | : | No. 1327 EDA 2015 |

Appeal from the Judgment of Sentence March 31, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0006717-2014;
CP-51-CR-0007097-2014; CP-51-CR-007098-2014

BEFORE:  BOWES, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 28, 2016**

John Vidra ("Vidra") appeals from the judgment of sentence imposed after he was convicted of three counts of criminal mischief, two counts of criminal trespass, and one count each of burglary, attempted burglary, and attempted criminal trespass.[1]  We affirm.

The trial court set forth the relevant factual and procedural history in its Opinion, which we incorporate herein by reference.  **See** Trial Court Opinion, 11/5/15, at 1-6.

On appeal, Vidra presents the following issues for our review:

1. Did not the lower court violate the Rules of Criminal Procedure and prejudice [Vidra] by consolidating three unrelated burglary prosecutions into a single trial?

2. As to CP 51-CR-0006717-2014 [(hereinafter, "Case No. 6717")], [*i.e.,*] the incident at 3053 Agate Street

---

[1] **See** 18 Pa.C.S.A. §§ 3304(a)(2), 3503(a)(1)(ii), 3502(a)(4), 901(a).

[(hereinafter, "the Agate Property")], did not the lower court violate the *corpus delicti* rule[,] as the Commonwealth failed to establish that a crime had occurred, as required for the admission and consideration of [Vidra's] statement?

3. In [Case No. 6717, *i.e.,*] the incident at [the] Agate [Property], and CP 51-CR-0007097-2014 [(hereinafter, "Case No. 7097")], *i.e.,*] the incident at 3224 Miller Street [(hereinafter, "the Miller Property")], was not the evidence insufficient to sustain the convictions for criminal trespass, graded as a felony of the second degree, because there was no evidence that [Vidra] broke into either property?

4. In [Case No. 7097, *i.e.,*] the incident at [the] Miller [Property], was not the evidence insufficient to sustain a conviction for criminal mischief, a felony of the third degree, where [Vidra] was seen exiting a property, which was then left unsecured, and the next day[,] found to have been ransacked?

5. As to CP 51-CR-0007098-2014 [(hereinafter, "Case No. 7098")], [*i.e.,*] the incident at 3471 Frankford Avenue [(hereinafter, "the Frankford Property")], was not the evidence insufficient to sustain a conviction for attempted burglary, as there was no intent to commit a crime therein?

Brief for Appellant at 3-4.

Vidra first argues that the trial court erred and violated the Rules of Criminal Procedure by consolidating the three separate cases (Case Nos. 6717, 7097, and 7098). *See id.* at 13-24.

The principles governing our review are well settled:

In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. Offenses charged in separate informations may be tried together if … "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the

[fact-finder] so that there is no danger of confusion[.]"
Pa.R.Crim.P[.] 582(A)(1)[(a)]. The court has discretion to order
separate trials if "it appears that any party may be prejudiced"
by consolidating the charges. Pa.R.Crim.P[.] 583.

Our Supreme Court has established a three[-]part test,
incorporating these two rules, for deciding the issue of joinder
versus severance of offenses from different informations. The
court must determine

> [w]hether the evidence of each of the offenses would be
> admissible in a separate trial for the other; whether such
> evidence is capable of separation by the [fact-finder] so
> as to avoid danger of confusion; and, if the answers to
> these inquiries are in the affirmative, whether the
> defendant will be unduly prejudiced by the consolidation
> of offenses.

*Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005) (some

citations omitted); *see also Commonwealth v. Robinson*, 864 A.2d 460,

481 (Pa. 2004) (stating that "[w]hether or not separate indictments should

be consolidated for trial is within the sole discretion of the trial court and

such discretion will be reversed only for a manifest abuse of discretion or

prejudice and clear injustice to the defendant.").

Vidra points out that the trial court held that evidence in the three

separate cases involved herein was admissible in a consolidated trial, under

an exception to our Rule of Evidence generally prohibiting the admission of

- 3 -

other crimes, wrongs, or acts, Pa.R.E. 404(b),[2] as evidence of a "common scheme, plan or design" (hereinafter, "the common plan exception"). ***See*** Brief for Appellant at 10-12.

In the context of consolidation involving the common plan exception, our Pennsylvania Supreme Court has stated that

> [w]hile evidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies, such evidence is admissible … to show a common plan, scheme or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

***Robinson***, 864 A.2d at 481 (citation omitted). "To establish similarity, several factors to be considered are the elapsed time between the crimes,

---

[2] Rule 404(b) provides, in relevant part, as follows:

(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b)(1)-(3).

the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Id.* (citation omitted).

Vidra asserts that the three separate incidents were not sufficiently similar for the following reasons:

- In Case No. 6717 (the Agate Property), police observed Vidra removing copper wire by hand; he had no tools. Brief for Appellant at 17. In contrast, the Miller Property (Case No. 7097) "was burglarized in a sophisticated way[,]" in that "there was a tall ladder placed against the second story window[, and] the burglar used tools to cut all of the copper pipes from the basement[.]" *Id.*

- "In [Case No. 6717], [] Vidra was found inside the [Agate Property] at 11:00 p.m. In contrast, the other two cases occurred in the morning." *Id.* at 18 (citation omitted).

- "Each of the homes had features that suggested they were vulnerable to burglary, but this is a generic trait of burglaries in general, and does not suggest a single perpetrator." *Id.*

Additionally, Vidra contends that the consolidation was highly prejudicial to him, particularly because of the admission into evidence of Vidra's inculpatory statement to police at Case No. 6717, and the fact that he was arrested in that case while extracting copper wire from the Agate Property. *Id.* at 24; *see also id.* (asserting that "[b]y granting consolidation, [Vidra's] admission in … [C]ase [No. 6717] was improperly used to bolster the other two, far weaker cases.").

Upon review, we discern a shared similarity in the details of the crimes that supports consolidation of the three separate cases. The crimes occurred in the same general section of northeast Philadelphia (within a 1.4-

mile radius), and were committed within one month of each other. *See* N.T., 10/28/14, at 5-7. Moreover, in each incident, the perpetrator targeted houses that appeared from the outside to be vacant. *Id.* at 5-6. In similar factual circumstances, this Court has held that the similarity of the offenses supported consolidation. *See Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa. Super. 2013) (upholding the trial court's consolidation of two attempted burglary indictments against the defendant, where the separate crimes "took place in close temporal and geographic proximity," (*i.e.*, within two months of each other, and in the same section of Philadelphia), and there were similarities in the victims the defendant targeted and the means he employed in attempts to break into their apartments); *Commonwealth v. Janda*, 14 A.3d 147, 156 (Pa. Super. 2011) (affirming trial court's consolidation of two cases against defendant for nine separate home burglaries that occurred over the span of five months, within an approximately five-mile radius, and the targeted homes were all situated such that they were not visible from the road); *see also Robinson*, *supra*.

Additionally, the trial court, which sat as the fact finder at Vidra's consolidated trial, observed in its Opinion that

> the evidence concerning each alleged victim was readily separable by the court …, as each victim/witness testified to the distinctive events supporting the respective charges, corroborated by other distinguishable evidence. Moreover, [Vidra] was charged with numerous offenses and was only convicted of some of the charges against him. The trier-of-fact clearly was able to separate and distinguish each offense.

- 6 -

Trial Court Opinion, 11/5/15, at 9. We agree with the trial court's determination that Vidra was not unduly prejudiced by consolidation. **See id.**; **see also Commonwealth v. Kearney**, 92 A.3d 51, 61 (Pa. Super. 2014) (stating that "[e]ven if prejudicial information was considered by the trial court, a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence.") (citation omitted).

Finally, consolidating the cases against Vidra also served the interest of judicial economy. "The general policy of the law is to encourage … consolidation of indictments when judicial economy can thereby be affected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence." **Commonwealth v. Patterson**, 546 A.2d 596, 600 (Pa. 1988). Any possibility of prejudice to Vidra did not outweigh this consideration. **See Commonwealth v. Morris**, 425 A.2d 715, 718 (Pa. 1981) (stating that "in determining whether the trial court abused its discretion, this Court must "weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy.").

Accordingly, we conclude that the trial court properly exercised its discretion in consolidating the three separate cases, and Vidra's first issue does not entitle him to relief.

In his second issue, Vidra contends that the trial court erred by admitting into evidence the inculpatory statement he made to police when

he was arrested inside of the Agate Property, in violation of the *corpus delicti* rule. Brief for Appellant at 25 (citing, *inter alia*, **Commonwealth v. Ware**, 329 A.2d 258, 274 (Pa. 1974) (summarizing the *corpus delicti* rule as follows: "a criminal conviction may not be based on the extra-judicial confession or admission of the defendant unless it is corroborated by independent evidence establishing the *corpus delicti*."). Vidra maintains that (1) his burglary conviction concerning the Agate Property "was based upon [his] own statement that he did not live in the property, was homeless, and was pulling out wire to get something to eat and go to rehab"; and (2) "the property [owner] was not called as a witness, or even identified." Brief for Appellant at 25. According to Vidra,

> [the] evidence did not establish that a crime was being committed by a preponderance of the evidence or beyond a reasonable doubt. There were no signs of forced entry to the [Agate P]roperty. The [Agate P]roperty was vacant, with "things scattered all over the floor," which is consistent with demolition or renovations. Although [] Vidra was pulling wire from the wall, this did not establish the *corpus delicti*. Pulling wiring from a wall is consistent not only with crime, but with the process of making a home safe, by removing faulty or dangerous wiring.

*Id.* at 28.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the standard of review and the law concerning the *corpus delicti* rule, thoroughly addressed Vidra's claim, and determined that the Commonwealth proved the *corpus delicti* by both a preponderance of the evidence and beyond a reasonable doubt. **See** Trial Court Opinion, 11/5/15, at 10-12. As the trial

court's rationale and determination is supported by the record and the law, we affirm on this basis with regard to Vidra's second issue. ***See id.***

In his third issue, Vidra argues that the Commonwealth failed to present sufficient evidence to support his two convictions of criminal trespass in Case Nos. 6717 and 7097, graded as second-degree felonies (hereinafter referred to as "trespass – F2"). Brief for Appellant at 30. Specifically, Vidra contends that there was no evidence presented that he "broke into" either the Agate Property or the Miller Property, which is a necessary element of trespass – F2.[3] ***See id.*** at 30-33. Specifically, Vidra asserts, there was no evidence that the doors to either property were

---

[3] The criminal trespass statue, 18 Pa.C.S.A. § 3503, provides, in relevant part, as follows:

> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
>
> > (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or
> >
> > ii) *breaks into* any building or occupied structure or separately secured or occupied portion thereof.
>
> (2) An offense under paragraph (1)(i) is a felony of the third degree, and *an offense under paragraph (1)(ii) is a felony of the second degree*.
>
> (3) As used in this subsection:
>
> *"Breaks into." —To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.*

*Id.* § 3503(a) (emphasis added).

locked, or that Vidra entered by force, breaking, or through an opening not designed for human access. ***See id.*** at 31-33. Thus, Vidra urges, the convictions should be graded as third-degree felonies, under section 3503(a)(1)(i). ***Id.*** at 30.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. … Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted). On a sufficiency of the evidence claim, the Commonwealth is entitled to all reasonable inferences arising out of the evidence presented. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1062 (Pa. 2013).

In its Opinion, the trial court addressed and rejected Vidra's sufficiency challenge to his conviction of trespass – F2 concerning the Miller Property (Case No. 7097). ***See*** Trial Court Opinion, 11/5/15, at 14-16. We affirm based on the trial court's sound rationale with regard to this conviction, ***see***

*id.*, with the following addendum concerning Case No. 6717 (the Agate Property).

Officer Patrick Gereaghty ("Officer Gereaghty") found Vidra inside of the Agate Property at approximately 11:00 p.m. N.T., 12/18/14, at 12. On the front door of the Agate Property was a sign stating that it was scheduled to be sold at a sheriff's sale. *Id.* Vidra was covered in drywall dust and ripping electric wiring out of the wall. *Id.* at 14. He admitted to Officer Gereaghty that he was stealing the wiring and that he did not have permission to be there. *Id.* at 15. We acknowledge that there was no direct evidence presented that Vidra had forced entry into the Agate Property. *See id.* at 25. However, the trial court, as the fact-finder, was entitled to reasonably infer that Vidra had "broken into" the Agate Property, *see Lyons*, *supra*, given that (1) the crime occurred late at night, inside of a house that was vacant and scheduled to be sold;[4] and (2) Vidra admitted that he was there without permission to steal wiring. Accordingly, the trial court properly rejected Vidra's sufficiency challenge to his convictions of trespass – F2.

In his fourth issue, Vidra contends that the evidence is insufficient to sustain his conviction, at Case No. 7097 (the Miller Property), of criminal mischief. Brief for Appellant at 34-36. Vidra points out that the owner of

---

[4] Officer Gereaghty testified that he had attempted to reach the owner of the Agate Property via telephone, by calling a phone number listed on the sheriff's sale sign. N.T., 12/18/14, at 24. No one answered the calls. *Id.*

the Miller Property, Kathleen Reick ("Reick"), discovered, on May 18, 2014, that the Miller Property had been ransacked sometime after her contractor had last been at the Miller Property (and locked the doors), on May 12, 2014. *Id.* at 34. Vidra points out Reick's testimony that there was a previous break-in at the Miller Property, and, according to Vidra, "[a]nother person could have been inside the [Miller P]roperty and damaged it before Vidra entered" on May 17, 2014. *Id.* at 35; *see also id.* (pointing out that the police officer who arrested Vidra on May 17, 2014, did not thereafter secure the Miller Property, and asserting that the damage to the Miller Property, therefore, could have been caused by someone after Vidra was in custody). Additionally, Vidra asserts that "the nature of the damage in this case suggests that it was not [] Vidra who caused the damage. [Reick] found that all of the copper pipes had been cut out of the basement, and removed from the house[.] This is a task that requires tools, which [] Vidra did not have." *Id.* (internal citation omitted).

In its Opinion, the trial court discussed the applicable law, addressed Vidra's claim, and determined that the evidence was sufficient for the fact-finder to find him guilty of criminal mischief beyond a reasonable doubt. *See* Trial Court Opinion, 11/5/15, at 16-18. We affirm based on the trial

court's rationale with regard to this issue. **See id.**[5]

In his final issue, Vidra argues that in Case No. 7098 (the Frankford Property), the evidence was insufficient to sustain his conviction of attempted burglary[6] because the Commonwealth failed to prove beyond a reasonable doubt that he intended to commit a crime inside of the Frankford Property. **See** Brief for Appellant at 37-38. Vidra points out that the owner of the Frankford Property, Teresa Todd ("Todd"), testified that (1) she heard a loud noise coming from her private alleyway; (2) then saw Vidra run through her yard and climb her fence to leave the Property; and (3) thereafter discovered that her basement window, which was adjacent to the alleyway, had been broken.[7] **Id.** at 38. According to Vidra, however, this evidence was insufficient to prove that he intended to commit a crime inside of the Frankford Property because (1) he never entered the residence; and (2) the police did not find any stolen property or tools on his person when they arrested him shortly after Todd called the police. **Id.**

---

[5] Moreover, as noted above, the trial court properly found that Vidra was involved in a common scheme of targeting vacant rowhomes in the area and ransacking them for copper materials contained therein.

[6] Vidra does not challenge his convictions at Case No. 7098 of attempted criminal trespass and criminal mischief. Brief for Appellant at 38.

[7] Concerning the damage, Todd stated that Vidra had removed an outer screen over the basement window, and then pushed on the window with such force that it broke the lock and the wooden frame around the window. **See** N.T., 12/18/14, at 58, 60-61.

- 13 -

In support of his claim, Vidra relies upon our Supreme Court's decision in **Commonwealth v. Wilamowski**, 633 A.2d 141 (Pa. 1993). In that case, the defendant kicked in a person's garage door and fled from the scene. **Id.** at 142. The Supreme Court held that the evidence was insufficient to convict the defendant of attempted burglary, reasoning as follows:

> Although the Commonwealth's facts prove that [the defendant] kicked at the door and tore it off of its hinges, there was no additional evidence to establish that he possessed an intent to commit a crime inside. He broke the door and apparently walked away from it without any showing that he entered the structure or attempted to enter. His path into the structure was now unobstructed, but he chose to walk away and go to the neighbor's house to ask for directions. Evidence of [the defendant's] subsequent actions in flight is also insufficient, standing alone, to lend any support to a permissible inference of intent to commit a crime inside since the flight is consistent with his efforts to avoid apprehension for his conduct of breaking down the door.

**Id.** at 144 (emphasis added); **see also Commonwealth v. Alston**, 651 A.2d 1092, 1094 (Pa. 1994) (explaining **Wilamowski** by stating that "[w]e held that a 'totality of the circumstances' approach is more appropriate when evaluating the Commonwealth's evidence supporting the intent element [for a conviction of attempted burglary]. We then held that more than merely breaking a door or window is required to support an inference of intent to commit a crime *inside*.") (emphasis in original).

In its Opinion, the trial court set forth the applicable law, addressed Vidra's claim, and determined that the evidence was sufficient for the fact-

finder to find that Vidra had the necessary intent for a conviction of attempted burglary. *See* Trial Court Opinion, 11/5/15, at 18-20. We affirm based on the trial court's rationale with regard to this issue, *see id.*, with the following addendum.

Contrary to Vidra's claim, *Wilamowski* is distinguishable and unavailing. In contrast to *Wilamowski* (where the defendant had departed after breaking the garage door, despite having an unobstructed path into the structure), here, the fact-finder could reasonably infer, from the totality of the circumstances, that Vidra fled the Frankford Property before entering it, not because he had no intent to enter it, but because he had been discovered breaking-in. After Vidra broke the basement window to the Frankford Property, a nearby dog began barking. N.T., 12/18/14, at 56, 73. According to Todd, after hearing the barking, Vidra "climbed the fence [in her backyard], and he was booking[, *i.e.*, running,] because I think he thought the dog was in my house, but the dog was in the next yard." *Id.* at 73. Additionally, Todd stated that the window that Vidra had broken was inaccessible without climbing over a stockade fence, *see id.* at 74-75, which could further support a reasonable inference that Vidra broke the window with an intent to commit a crime inside the residence (and not merely for vandalism purposes). Finally, unlike the situation in *Wilamowski*, here, Vidra was involved in a common scheme of breaking into homes that

appeared from the outside to be vacant, in the same neighborhood in which the Frankford Property was located.  **See supra** (issue 1).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF   :   CP-51-CR-0006717-2014
PENNSYLVANIA     :   CP-51-CR-0007097-2014
        :   CP-51-CR-0007098-2014

   vs.      :
        :
        :   **SUPERIOR COURT**
JOHN VIDRA     :   **NO. 1327 EDA 2015**

**OPINION**



CP-51-CR-0006717-2014 Comm. v. Vidra, John H.
Opinion

7366332821

**FILED**

NOV 5 2015

Criminal Appeals Unit
First Judicial District of PA

**MELCHIORRE, J.**           **NOVEMBER 5, 2015**

## I.   FACTS AND PROCEDURAL HISTORY

On or about May 28, 2014, the Defendant, John Vidra, was arrested and was charged with Burglary[1], Criminal Attempt - Burglary[2], Criminal Trespass[3], Criminal Attempt-Criminal Trespass[4], Theft by Unlawful Taking/Disposition[5] and Criminal Mischief[6] for incidents that occurred at three (3) residences over a four (4) week period of time.

---

[1] 18 Pa. C.S.A. § 3502.

[2] 18 Pa. C.S.A. § 901.

[3] 18 Pa. C.S.A. § 3503.

[4] 18 Pa. C.S.A. § 3503.

At CP-51-CR-0006717-2014, the Defendant was arrested and was charged with Burglary, Criminal Trespass, Theft by Unlawful Taking/Disposition and Criminal Mischief for events that occurred on April 28, 2014 at 3053 Agate Street in the City and County of Philadelphia.

At CP-51-CR-0007097-2014, the Defendant was arrested and was charged with Burglary, Criminal Trespass, and Criminal Mischief for events that occurred on May 17, 2014 at 3224 Miller Street in the City and County of Philadelphia.

At CP-51-CR-0007098-2014, the Defendant was arrested and was charged with Criminal Attempt - Burglary[7], Criminal Attempt -Criminal Trespass, and Criminal Mischief for events that occurred on May 27, 2014 at 3471 Frankford Avenue in the City and County of Philadelphia.

A waiver trial was conducted before this court on December 18, 2014. The facts viewed in the light most favorable to the Commonwealth as the verdict-winner established that on April 28, 2014, the Defendant was found by Police Officer Patrick Gereaghty and his partner, Officer Lang (first name not given), removing copper wire and piping from a wall in the dining room area of 3053 Agate Street. The officers had responded to this location because of a report of a burglary in progress. Officer Gereaghty testified that when he entered the residence he observed the Defendant in the dining room area covered in dust, wearing gloves, pulling wire from the wall that was broken, not cut. Officer Gereaghty stated that the house appeared abandoned, that there was a bed in the front bedroom, and things were scattered around the second floor like somebody had just moved out. (N.T. 12/18/14, pp. 12-16, 28). Before he entered the house, Officer Gereaghty observed a sheriff's sign posted on the interior door with a date of May 2014

---

[5] 18 Pa. C.S.A. § 3921.

[6] 18 Pa. C.S.A. § 3304..

[7] 18 Pa. C.S.A. § 901.

and a phone number. (N.T. 12/18/14, p. 25). Officer Gereaghty stated that the clothes the Defendant was wearing did not indicate that he was a "worker" working on the property. Officer Gereaghty did not see the Defendant with any tools. No tools were found on the Defendant and Officer Gereaghty did not investigate who owned the property. (N.T. 12/18/14, pp. 24-26). Officer Gereaghty stated that the Defendant told him the he did not live in the house and that he was there pulling the wire so that he could get something to eat; he also told the officer that he was going to rehab the next day. (N.T. 12/18/14, p. 29). Officer Gereaghty placed the Defendant under arrest.

On CP-51-CR-0007097-2014, Kathleen Reick, the owner of the premises (3224 Miller Street), testified that her property was in the process of being rehabbed on May 17, 2014. The front door was boarded and bolted because of a previous break-in. She went around the back of the property and noticed a ladder leaning up against the second floor window. The back door was unlocked and unbolted. Based on what she observed, Ms. Reick called the police to investigate but they were unable to come at that time. Ms. Reick contacted her father, two (2) nephews, and two (2) friends who entered the property with her. When she entered, she was unable to turn on the lights because the wires had been cut. Ms. Reick stated that all the wires had been cut and the copper pipe in the basement was missing. (N.T. 12/18/14, pp. 36-39). On re-direct, Ms. Reick testified that she did not know the Defendant and did not give him permission to be in her house. Moreover, she did not give anyone permission to remove the copper pipes or wiring from the house. Ms. Reick stated that she had hired a general contractor to rehab the property and when the contractor left on May 12th, the water and electricity worked and the door had been dead bolted. (N.T. 12/18/14, pp. 51-52).

3

Police Officer Keith Stefankiewicz testified that on May 17, 2014, he responded to 3224 Miller Street because of a report of a burglary in progress. As a result of speaking to a neighbor at that location, Officer Stefankiewicz was allowed to walk through the man's house to his backyard where he observed the Defendant walking out of the back door of 3224 Miller Street. Officer Stefankiewicz asked the Defendant if he lived there and the Defendant responded no. Officer Stefankiewicz climbed over the fence and handcuffed the Defendant and placed him under arrest. Officer Stefankiewicz was unable to contact the owner of the property. (N.T. 12/18/14, pp. 40-42). On cross-examination, Officer Stefankiewicz testified that he arrested the Defendant at that time on only an outstanding warrant because he was unable to contact the owner of 3224 Miller Street. No tools or weapons were recovered from the Defendant. (N.T. 12/18/14, pp. 44-50).

On CP-51-CR-0007098-2014, Teresa Todd, the owner of the premises, testified that on May 27, 2014, at approximately 10:45 a.m., she was inside her residence at 3471 Frankford Avenue when she her a loud noise in the alley area of her property (this is a private alley that is hers, it is not shared with her neighbor). She looked out the dining room window but couldn't see into the alley because a large air conditioning unit was blocking her view. The dog next door started to bark so she looked out the window of her back door. She observed a man (later identified as the Defendant) coming from the alley area, across her yard, then over her fence. Ms. Todd observed the Defendant go pass her house, look at it, then walk down the street toward Webster Middle School. Ms. Todd called the police and when the detective arrived they went into her backyard where she noticed a wide open window. There were little pieces of wood from the window in the alley area and in her cellar; the window lock was found in the cellar, which had been intact earlier. A "For Sale" had been in her window. Ms. Todd testified that she did

4

not give the Defendant permission to enter her yard or to do anything with her window. (N.T. 12/18/14, pp. 55-61, 72-75).

Police Officer Paul Groves testified that he and his partner Officer Morton (first name not given) arrested the Defendant on May 27, 2014 at Webster Middle School after meeting with the complainant, Ms. Todd. (N.T. 12/18/14, pp. 81-82). On cross-examination, Officer Groves testified that the Defendant was walking with another male when he was arrested. Nothing was recovered from either of them. (N.T. 12/18/14, pp. 84-85).

A stipulation by and between counsel was entered indicating that if Detective McCullogh (first name not given) testified, he would say that he was investigating a potential burglary at 3224 Miller Street; that he interviewed the complainant, Kathleen Reick. Detective McCullogh wrote the affidavit of probable cause and arrested the Defendant who had previously been arrested by Officer Stefankiewicz on May 17, 2014 at 3224 Miller Street. (N.T. 12/18/14, p. 86).

The Defendant did not testify.

At the conclusion of the trial, the Defendant was found guilty of burglary, criminal trespass, theft by unlawful taking and disposition, and criminal mischief on CP-51-CR-0006717-2014. On CP-51-CR-0007097-2014, the Defendant was found guilty of criminal trespass and criminal mischief. On CP-51-CR-0007098-2014, the Defendant was found guilty of criminal attempt - burglary, criminal attempt - criminal trespass, and criminal mischief. Sentencing was deferred pending a presentence investigation.

On March 31, 2015, the Defendant was sentenced to an aggregate term of five (5) to ten (10 years of incarceration followed by five (5) years of probation.[8] The Defendant filed a Notice

---

[8] The Defendant was sentenced to a term of incarceration of three (3) to six (6) years on the attempted burglary charge to be followed by a term of probation of five (5) years on CP-51-CR-0007098-2014. On CP-51-CR-0007097-2014, the Defendant was sentenced to a consecutive term of one (1) to two (2) years of incarceration on the criminal trespass conviction. On CP-51-CR-0006717-2014, the Defendant was sentenced to a consecutive

of Appeal to the Superior Court. Following receipt of the notes of testimony, this court filed an Order requesting the Defendant to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. Rule 1925(b). On August 17, 2015, a statement was filed on behalf of the Defendant.

## II.     ISSUE ON APPEAL

In summary, the Defendant raises the following issues on appeal:

1.    The lower court erred by consolidating three unrelated burglary cases in to a single trial.

2.    In CP-51-CR-0006717-2014, the lower court erred and violated the corpus delicti rule when it admitted the Defendant's statement into evidence even though the Commonwealth failed to establish that a crime had been committed. Also, the evidence was insufficient to prove, beyond a reasonable doubt, that the Defendant was guilty of criminal trespass because there was no evidence of him breaking into the property.

3.    In CP-51-CR-0007097-2014, the evidence was insufficient to prove, beyond a reasonable doubt, that the Defendant was guilty of criminal trespass because there was no evidence of him breaking into the property. The evidence was also insufficient to prove criminal mischief where the Defendant was only seen exiting the property; the property was then left unsecured and found to be ransacked the next day.

term of one (1) to two (2) years of incarceration on the burglary conviction. No further sentence was imposed on the remaining counts.

6

4.  In CP-51-CR-0007098-2014, the evidence was insufficient to prove, beyond a reasonable doubt, that the Defendant was guilty of all charges as there was no intent to commit a crime therein and the evidence did not establish that the Defendant attempted to break into the house.

## III.  **DISCUSSION**

The Defendant first argues that the court erred and abused its discretion by granting the Commonwealth's motion to consolidate the multiple burglaries thereby prejudicing him and denying him due process of law and a fair trial with respect to each case in violation of both the Pennsylvania and United States Constitutions. This argument fails.

It is well settled in this Commonwealth that offenses charged in separate informations may be tried to together if "... the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the [fact finder] so that there is no danger of confusion." Commonwealth v. Judd, 2006 Pa. Super. 84; 897 A.2d 1224; 1230 (2006) *citing* Pa.R.Crim.P. Rule 582 (A) (1) (a), 42 Pa.C.S.A.  The Defendant argues that the court abused its discretion in denying his motion to separate or sever each case rather than to present this matter as a single case ultimately involving three different complainants.

Several commentators have noted that under Rule 404 of the Pennsylvania Rules of Evidence, case law applying the "common scheme or plan" exclusion has been called into doubt based on the fact that it is not listed in Rule 404 (b) (2).[9] Judd, *supra. See* Leonard Packel and

---

[9]  Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.

*     *     *     *

(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order

7

Anne Bowen Poulin, Pennsylvania Evidence § 404-9 (a) (2d ed. 1999); Edward D. Ohlbaum, Ohlbaum on the Pennsylvania Rules of Evidence, § 404.22[2]-[4] (2003-2004 ed.). However, the Pennsylvania Supreme Court has repeatedly reiterated the settled rule of admissibility regarding evidence which demonstrates a defendant's criminal tendencies by way of a common plan, scheme or design:

> [While] evidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies[,] such evidence is admissible ... to show a common plan, scheme or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

Judd, 897 A.2d at 1231 *citing* Commonwealth v. Robinson, 581 Pa. 154, 190, 864 A.2d 460, 481 (2004), *cert. denied*, 126 S. Ct. 559, 163 L. Ed. 2d 470, 74 USLW 3273 (2005) *quoting* Commonwealth v. Keaton, 556 Pa. 442, 457, 729 A.2d 529, 537 (1999), *cert. denied*, 528 U.S. 1163, 120 S. Ct. 1180, 145 L. Ed. 2d 1087 (2000).

This type of evidence is also admissible to establish the identity of the person charged: "To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused." Commonwealth v. Rush, 538 Pa. 104, 113, 646 A.2d 557, 560 (1994) *quoting* McCormick, Evidence, § 190 (1972 2d ed.). In the case *sub judice*, however,

---

to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

(4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

8

identity was not at issue. There is no suggestion from the defense that any of the witnesses had misidentified the Defendant. The defense in this case was a denial of the criminal conduct, and the only issue truly presented to the court was whether the trier-of-fact believed the Commonwealth witnesses.

Here, the charges against the Defendant constituted an ongoing course of very similar break-ins during a short period of time in the same general locale. Moreover, the evidence concerning each alleged victim was readily separable by the court as the fact finder, as each victim/witness testified to the distinctive events supporting the respective charges, corroborated by other distinguishable evidence. Moreover, the Defendant was charged with numerous offenses and was only convicted of some of the charges against him. The trier-of-fact clearly was able to separate and distinguish each offense.

Contrary to the Defendant's arguments, there was no confusion on the part of the trier-of-fact.

> In this context, when severance is the issue, prejudice is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which ... [consolidation] speaks is rather that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

Judd, 897 A.2d at 1232 *citing* Commonwealth v. Lark, 518 Pa. 290, 307-308, 543 A.2d 491, 499 (1988). The court was correct in consolidating these matters as the same law applied in all three cases, the same defense was applied, and the facts were similar and easily separable. Additionally, the Defendant was observed at all three locations which were within 1.4 miles of one another. Here, no error or any harmful prejudice in the consolidation of these cases has been shown.

## A.    CP-51-CR-0006717-2014  -  3053 Agate Street

The Defendant argues that this court erred and violated the *corpus delicti* rule when it admitted the Defendant's statement into evidence and took that statement into consideration during deliberations.   According to the Defendant, the trial court improperly admitted his statement as the Commonwealth failed to establish that a crime had been committed by a preponderance of the evidence and then failed to prove that a crime had occurred beyond a reasonable doubt.  This argument must fail.

The *corpus delicti* rule is designed to guard against the "hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." Commonwealth v. Hernandez, 2012 PA Super 40, 39 A.3d 406, 410 (2012).  The *corpus delicti* rule is a rule of evidence. The appellate court's standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.  Hernandez, *supra. citing* Commonwealth v. Herb, 852 A.2d 356, 363 (Pa.Super.2004) (citations omitted).

The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal

responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's **admission** of the accused's statements and the second step concerns the fact finder's **consideration** of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt. Hernandez, 2012 PA Super at 41, 39 A.3d at 411 *citing* Commonwealth v. Young, 904 A.2d 947, 956 (Pa.Super.2006), *appeal denied,* 591 Pa. 664, 916 A.2d 633 (2006) *quoting* Commonwealth v. Rivera, 828 A.2d 1094, 1103–04, n. 10 (Pa.Super.2003) *appeal denied,* 577 Pa. 672, 842 A.2d 406 (2004)) (internal quotation marks omitted) (emphasis in original). Here, the Defendant argues that the Commonwealth failed to establish either.

The burglary statute provides in relevant part: § 3502. Burglary

> (a) Offense defined.--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;
>
> \*   \*   \*   \*
>
> (4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

11

(c)     Grading.-- (1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2)     If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.18 Pa.C.S.A. § 3502(a), (c)(1)-(2).

18 Pa. C.S.A. §3502.

Despite the Defendant's argument to the contrary, the Commonwealth proved the *corpus delicti* by both a preponderance of the evidence and beyond reasonable doubt. Officer Gereaghty testified that he responded to this location because of a report of a burglary in progress. The Defendant, who was covered in dust, was found by police in the dining room area of the house pulling wiring and or piping from a hole in the wall that was broken, not cut. There was no indication that he lived in the house (no mail with his name on it, no clothes, etc) or that he was a contractor doing work. Moreover, it is highly unlikely that the City of Philadelphia would have authorized someone to be in the property working at 11:00 at night when the Defendant was found by the officers pulling out the wiring. There was no abuse of discretion by the court.

Next, the Defendant contends that there was insufficient evidence to establish beyond reasonable doubt the crime of criminal trespass, graded as a felony of the second degree. According to the Defendant, there was no evidence that he gained entry or attempted to gain entry to the property or that he removed copper wires and or pipes. The court finds the Defendant's claim to be meritless. There was sufficient evidence to convince the court beyond reasonable doubt that the Defendant was guilty of committing the aforementioned criminal acts.

Appellate review of a claim challenging the sufficiency of the evidence is as follows: The standard the appellate courts apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a

12

reasonable doubt. <u>Commonwealth v. Rivera</u>, 2009 PA Super 207, 983 A.2d 767 (Pa. Super. Ct. 2009). *See also* <u>Commonwealth v. Walker</u>, 540 Pa. 80, 656 A.2d 90, 94 (1995); <u>Commonwealth v. Bracey</u>, 541 Pa. 322, 330, 662 A.2d 1062, 1065 (1995); <u>Commonwealth v. Burgos</u>, 530 Pa. 473, 476, 610 A.2d 11, 13 (1992). In applying the above test, appellate courts may not weigh the evidence and substitute their judgment for that of the fact-finder. In addition, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. <u>Commonwealth v. Rivera</u>, *supra*. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. <u>Id</u>. *citing* <u>Commonwealth v. Jones</u>, 2005 PA Super 166, 874 A.2d 108, 120-21 (Pa. Super. 2005) *quoting* <u>Commonwealth v. Bullick</u>, 2003 PA Super 285, 830 A.2d 998, 1000 (Pa. Super. 2003). *See also* <u>Commonwealth v. Walker</u>, 540 Pa. at 84, 656 A.2d at 97; <u>Commonwealth v. Smith</u>, 502 Pa. 600, 604, 467 A.2d 1120 (1983); <u>Commonwealth v. Nelson</u>, 320 Pa. Super. 488, 467 A.2d 638 (1983); <u>Commonwealth v. Cody</u>, 401 Pa. Super. 85, 584 A.2d 992 (1991); *appeal denied* 527 Pa. 622, 592 A.2d 42. The victim's testimony alone may provide sufficient evidence to establish the crimes with which the defendant was charged. <u>Cody</u>, 584 A.2d at 993.

In the case *sub judice*, the evidence was sufficient to find the Defendant guilty of criminal trespass as a felony of the second degree. The criminal trespass statute provides in relevant part:

13

(1)   A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(2) An offense under paragraph (1)(i) is a felony of the third degree, and an offense under paragraph (1)(ii) is a felony of the second degree.

(3)  As used in this subsection:

"Breaks into." To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

18 Pa.C.S. § 3503.  The evidence established that the Defendant was found standing in the dining room area of a house that was scheduled for sheriffs' sale at 11:00 at night.  He was covered in dust, removing copper wiring and piping from the wall that was broken, not cut.  The Defendant was not found with any tools and his clothing did not indicate that he was a worker (a contractor) working on the property.  (N.T. 12/18/14, pp. 12-16, 28-29).  The evidence was sufficient to sustain the Defendant's convictions.

**B.    CP-51-CR-0007097-2014 - 3224 Miller Street**

The Defendant claims that the evidence was insufficient to sustain his conviction for criminal trespass with respect to 3224 Miller Street. According to the Defendant, the evidence was insufficient to prove that he broke into the property as required for a criminal trespass conviction. Defendant's claim does not entitle him to relief.

14

Defendant was convicted of criminal trespass as a second-degree felony. As previously stated, a person is guilty of criminal trespass as a second degree felony if, "knowing that he is not licensed or privileged to do so, he ... breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii), (2). For purposes of the criminal trespass statute, the term "breaks into" is defined as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." Id. at § 3503(a)(3).

As previously stated, in reviewing a sufficiency of the evidence claim, the appellate court must view all of the evidence admitted at trial in the light most favorable to the Commonwealth and determine whether there was sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Ingram, 926 A.2d 470, 473 (Pa. Super. 2007). When conducting such review, the Court must keep in mind that, in proving a defendant's guilt, "the Commonwealth may sustain its burden by means of wholly circumstantial evidence." Commonwealth v. Cousar, 928 A.2d 1025, 1032 (Pa. 2007).

Based on these standards, the evidence presented at trial was sufficient to establish that the Defendant broke into 3224 Miller Street knowing he was not licensed or privileged to do so. Specifically, the evidence established that on May 17, 2014, Police Officer Keith Stefankiewiez responded to a radio call for a burglary in progress at this location. As a result of speaking to a neighbor at that location, Officer Stefankiewicz was able to walk through the man's house to his backyard where he observed the Defendant walking out of the back door of 3224 Miller Street. The Defendant told the officer that he did not live at the house. (N.T. 12/18/14, pp. 40-41). Kathleen Reick, the owner of the property testified that she had hired a general contractor to rehab this property. When the contractor left on May 12th, the water and electricity worked and

15

the door had been dead bolted. (N.T. 12/18/14, p. 52). On May 17, 2014, a ladder was propped up against the second floor window and the back door was unlocked and unbolted. (N.T. 12/18/14, p. 37). Ms. Reick testified that she did not know the Defendant and did not give him permission to be in her house. (N.T. 12/18/14, pp. 51-52). While it is true that there was no direct evidence that the Defendant broke into the Miller Street property, such illegal entry can readily be inferred from Ms. Reick's testimony; the doors had been locked and dead bolted. There is no question that the Defendant was inside the property; he seen walking out of the back door of a house that he was not given permission to be in. The evidence was sufficient to sustain the Defendant's conviction of criminal trespass as a second degree felony.

Next, Defendant argues that the evidence was insufficient evidence to prove, beyond a reasonable doubt, that he was guilty of criminal mischief, graded as a felony of the third degree, where the Defendant was seen exiting the property, which was then left unsecured and found to have been ransacked the next day.

The criminal mischief statute provides in relevant part: § 3304. Criminal Mischief

> (a) Offense defined.--A person is guilty of criminal mischief if he:
>
>        *         *         *
>
>   *
>
> (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;
>
> (b) Grading.--Criminal mischief is a felony of the third degree if the actor intentionally causes pecuniary loss in excess of $5,000, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a misdemeanor of the second degree if the actor intentionally causes pecuniary loss in excess of $1,000, or a misdemeanor of the third degree if he intentionally or recklessly causes pecuniary loss in excess of $500 or causes a loss in excess

of $150 for a violation of subsection (a)(4). Otherwise criminal mischief is a summary offense.

18 Pa. C.S.A. § 3304.

In Commonwealth v. Giddings, 686 A.2d 6 (Pa. Super. 1996), *allocatur denied,* 695 A.2d 784 (Pa. 1997), police observed Giddings and another male jumping over the porch rail that separated the victim's home from his neighbor's home. Giddings told the officers that they were looking for someone. He was stopped by the officers and frisked for weapons. After searching the victim's porch, the officers discovered a screwdriver below the front door and a hole in the door near the door knob. Giddings was then arrested, charged, and found guilty of several crimes related to this incident, including criminal mischief. Giddings, 686 A.2d at 7-8. On appeal, the Superior Court found that notwithstanding the fact that there was no testimony that anyone actually observed Giddings chopping at the victim's door with the screwdriver, there was sufficient evidence to support his conviction of criminal mischief. Id. at 13.

In Commonwealth v. Zambelli, 695 A.2d 848 (Pa. Super. 1997), where the evidence revealed that two women sitting in a parking lot heard a loud screeching sound and noticed Zambelli walking alongside a van with an object in his hand. The women followed appellant into a nearby store to identify him, informed a store clerk of what they had witnessed, and then went outside to look at the van. Seeing that the van was scratched, the store clerk called the police and appellant was arrested. On appeal, the Superior Court concluded that, when viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support appellant's conviction for criminal mischief. Id. at 851.

Here, Defendant was observed by Officer Stefankiewiez (who was responding to a radio call for a burglary in progress at this location) walking out of the back door of 3224 Miller

17

Street. The Defendant told the officer that he did not live at the house. Kathleen Reick, the owner of the property testified that when her contractor left on May 12th, the water and electricity worked and the door had been dead bolted. (N.T. 12/18/14, p. 52). On May 17th, a ladder was propped up against the second floor window and the back door was unlocked and unbolted. (N.T. 12/18/14, p. 37). All the wires had been cut and the copper pipe in the basement was missing. (N.T. 12/18/14, p. 39). Ms. Reick did not know the Defendant and did not give him permission to be in her house. When viewed in the light most favorable to the Commonwealth there was sufficient direct and circumstantial evidence to enable the fact-finder to find the Defendant guilty of criminal mischief beyond a reasonable doubt.

### C.   CP-51-CR-0007098-2014 - 3471 Frankford Avenue

As previously stated, in considering a challenge to the sufficiency of evidence, the evidence admitted at trial must be viewed in the light most favorable to the verdict winner and draw all reasonable inferences therefrom. Commonwealth v. Galindes, 786 A.2d 1004, 1009 (Pa. Super. 2001). It must then be determined whether the evidence was sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Id. The fact-finder may resolve any doubts regarding a defendant's guilt, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Id. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Commonwealth v. Lambert, 795 A.2d 1010, 1014 (Pa. Super. 2002) *quoting,* Commonwealth v. Hennigan, 753 A.2d 245, 253 (Pa. Super. 2000). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence. Id. Finally, it is the province of fact-finder

18

to pass upon the credibility of witnesses and the weight of the evidence produced, and is free to believe all, part or none of the evidence. Id.

Defendant claims that the evidence was insufficient to sustain his conviction for attempted burglary because the Commonwealth failed to prove he had the intent to commit a crime inside of Ms. Todd's residence. This court disagrees.

Under the Crimes Code a person commits a criminal attempt "when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. §901(a). "A person is guilty of a burglary if he enters an occupied structure with the intent to commit a crime therein and without license or privilege to enter." 18 Pa.C.S.A. §3502(a); Commonwealth v. Alston, 651 A.2d 1092, 1094 (Pa. 1994). Accordingly, the Commonwealth must prove intent to "enter and occupied structure" without license or privilege and intent to "commit a crime after entering." Commonwealth v. Cannon, 443 A.2d 322, 324 (Pa. Super. 1982).

The intent element of attempted burglary may be inferred from circumstantial evidence. Alston, *supra.* Such circumstantial proof must be analyzed in the "totality of the circumstances." Id. Additionally, the intent to commit a crime after entry may be inferred from the circumstances surrounding the incident, from actions as well as words; however, the actions must bear a reasonable relation to the commission of a crime. Id. at 1095. The Commonwealth is not required to allege or prove what particular crime a defendant intended to commit after his forcible entry into the private residence. Id.

In this case, looking at the totality of the circumstances and the reasonable inferences drawn from the evidence, Defendant intended to enter Ms. Todd's home to commit a crime. The evidence and photographs revealed the nature of the home and the residential character of the

19

neighborhood itself. Taken together with the Defendant's behavior and actions, he was interested in ascertaining if someone was home or not. He was essentially "casing the joint." Ms Todd was alerted to his presence by a loud noise in her alley way, then the dog barking. She observed the Defendant coming from the alley area beside her home; he climbed her fence; looked at her home; then walked down a little more. The broken basement window was immediately adjacent to the alley way. The Defendant may have ceased his efforts upon breaking the window when he heard the neighbor's dog barking or he figured out that someone was in fact in the house as Ms. Todd was looking out the window toward the alley and then the back window looking into her yard. Had Defendant completed his action in breaking the basement window, he could have easily gained access into the home. These facts all allowed this court to reasonably infer Defendant possessed the intent to commit a crime. *See,* Commonwealth v. Galindes, 786 A.2d 1004 (Pa. Super. 2001); Commonwealth v. Willetts, 277 Pa. Super. 538, 419 A.2d 1280, 1282 (1980) (evidence, including defendant's attempt to break padlock on garage, late hour at which he made his attempt, and his flight upon arrival of police, was sufficient to sustain conviction of attempted burglary). Thus, the evidence clearly supports the attempted burglary conviction.

Next, Defendant claims that the Commonwealth failed to establish the elements of criminal trespass and criminal mischief. This argument must also fail.

A person commits criminal trespass if, "knowing he is not licensed or privileged to do so...he breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. §3503(a)(1)(ii). "Breaks into" is to gain entry by force, breaking intimidation, unauthorized opening of locks, or through an opening not designed for human access. Id. at §3503(a)(3). The Defendant had no permission to be on Ms. Todd's property when he forcibly broke the window. Here, his entry was accomplished when he broke the window.

20

window. Therefore, the forceful breaking of the window supports the criminal trespass conviction. There was also sufficient evidence to support finding the Defendant guilty of criminal mischief. A person is guilty of criminal mischief if. "he ... intentionally or recklessly tampers with tangible property of another so as to endanger person or property. Again, Ms. Todd heard loud noises toward her alley way, where the basement window was and she saw the Defendant in her yard without permission. The Defendant was clearly tampering with Ms. Todd's property.

## IV. CONCLUSION

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify granting Defendant's request for relief in this case. For the reasons set forth above, Defendant's judgment of sentence should be affirmed.

BY THE COURT:

_____
VINCENT N. MELCHIORRE, J.

21