**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Wyatt R. INGRAM, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 14, 2007.

Filed May 21, 2007.

Reargument Denied July 20, 2007.

Daniel R. Bush and Scot R. Withers, West Chester, for appellant.

Kathleen C. Wright, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: LALLY–GREEN, GANTMAN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Wyatt R. Ingram appeals the judgment of sentence entered in the Court of Common Pleas of Chester County, following his conviction for one count of

cruelty to animals,[1] which stemmed from his killing of a dog on his property. On appeal, Appellant claims the evidence was insufficient to sustain his conviction because he was authorized by statute to kill the dog and, alternatively, because the Commonwealth failed to prove that he killed the dog with malice. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: Appellant, a resident of Downingtown, Pennsylvania, raised white-tailed deer on his property for commercial purposes since 1987. Appellant had a permit from the Pennsylvania Game Commission to propagate captive white-tailed deer. Appellant bred and raised the deer in a three-quarter acre pen, surrounded by a 600 foot long, 10–12 foot high fence. At various points since he began raising deer, Appellant's deer were harassed in their pen by various dogs, causing the deer to become skittish and to ram and thrash against the fencing, which occasioned injury to the deer and their antlers, thereby rendering the deer valueless and unable to be sold.

¶ 3 On the evening of June 24, 2005, two dogs owned by Appellant's neighbor, William Belmonte, left Belmonte's property while he was away shopping and crossed onto Appellant's property. The first dog, a 120–pound female Saint Bernard named "Cujo," was chained to a metal stake, which Cujo snapped. The second dog, a female pit bull mix named "Mommy," was not restrained. When the dogs entered Appellant's property they began to harass the penned deer by running along the perimeter of the fence. Appellant's wife, Kathy, their minor son, and their dog "Teton," a Labrador retriever, were sitting on the deck overlooking the deer pen, and they saw the deer become agitated.[2]

Therefore, Mrs. Ingram, the child, and their dog went to the pen to investigate the cause of the deer's agitation. As they approached the pen, Cujo and Mommy ran toward them barking. Mrs. Ingram and Teton fended Cujo and Mommy off until the dogs turned their attention to a doe ramming itself against the fencing. At that time, Mrs. Ingram grabbed her son and ran into the house.

¶ 4 After entering the house, Mrs. Ingram informed Appellant of the situation, whereupon he procured a 12–gauge shotgun, loaded it with buckshot shells, and exited the house. Thereafter, Appellant shot and killed Cujo and shot Mommy, wounding the dog. Appellant retrieved Cujo's body and dumped it into the wooded area of his property. Appellant did not tell Mr. Belmonte that he killed Cujo. Several days later, after the smell of Cujo's decaying body became too great, Appellant dumped the dog's body near a creek bed on another neighbor's property.

¶ 5 When Mr. Belmonte returned home from his shopping trip, he discovered that his dogs were missing, and, therefore, he organized a search party to find them. After failing to find the dogs, Mr. Belmonte returned home to find Mommy lying on the front porch, bleeding from her back leg, but he did not find Cujo. Mr. Belmonte then transported Mommy to the Glenmoore Veterinary Hospital, where it was discovered through exploratory surgery that the dog had been shot.

¶ 6 On June 27, 2005, Mr. Belmonte contacted the Brandywine Police Department and informed the police that Mommy had been shot and that Cujo was still missing. Officer Joseph Glasgow responded to Mr. Belmonte's call, whereupon Mr. Belmonte informed Officer Glasgow that

---

1. 18 Pa.C.S.A. § 5511(a)(1)(i).

2. Appellant was not outside at this time.

the dogs may have run toward Appellant's property and that neighbors heard shots fired in the wooded area of Appellant's property at the time the dogs went missing. Officer Glasgow then questioned Appellant whether he saw dogs on his property and whether he discharged a firearm on his property; Appellant responded negatively to both questions.

¶ 7 On that same day, Mr. Belmonte and a friend continued their search for Cujo, and they discovered Cujo's remains near the creek bed.[3] Mr. Belmonte contacted Officer Glasgow, who arrived at the scene and observed the remains. Thereafter, Officer Glasgow contacted Appellant a second time regarding the dogs. Appellant denied any knowledge regarding the shooting of the dogs. However, on the following day, Appellant contacted Officer Glasgow and told him that he lied about his knowledge of the shooting of the dogs and that, in fact, he had shot them.

¶ 8 Thereafter, Appellant was arrested and charged with two counts of cruelty to animals, one count of disorderly conduct,[4] and one count of criminal attempt (cruelty to animals).[5] The case proceeded to a bench trial. At the close of the Commonwealth's case, Appellant moved for a judgment of acquittal on the grounds that he was authorized to kill the dog pursuant to the affirmative defenses set forth in 18 Pa.C.S.A. § 5511(a)(3), 3 P.S. § 459–501, and 34 Pa.C.S.A. §§ 2384–2385, and because the Commonwealth failed to present evidence that Appellant had killed the dog with malice. *See, e.g.,* 18 Pa.C.S.A. § 5511(a)(1)(i). The trial court took the motion under advisement and permitted Appellant to proceed with his case. Prior to the close of Appellant's case, the trial court granted Appellant's motion for judg-

ment of acquittal in part, and it acquitted Appellant of disorderly conduct. The trial court denied the motion as to all other counts. Thereafter, Appellant presented two other witnesses in his defense and rested.

¶ 9 On March 13, 2006, the trial court found Appellant guilty of one count of cruelty to animals and not guilty of the remaining charges. Thereafter, on June 12, 2006, the trial court sentenced Appellant to 72 hours to one year of imprisonment, to be followed by one year of probation, plus 500 hours of community service and restitution. In turn, Appellant filed a timely notice of appeal to this Court. The trial court ordered Appellant to file a concise statement of matters within 14 days of the date of its order. Appellant complied with the trial court's order and filed the statement in a timely fashion. Thereafter, the trial court authored an opinion that addressed the issues presented in Appellant's concise statement.

¶ 10 Appellant asserts that the evidence was insufficient to support his conviction for cruelty to animals. Our review of challenges to the sufficiency of the evidence is governed by the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note

3. The creek bed was approximately twenty-five to fifty yards from Appellant's house.

4. 18 Pa.C.S.A. § 5503.

5. 18 Pa.C.S.A. § 901.

that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001) (citations omitted).

¶ 11 Appellant was convicted of violating 18 Pa.C.S.A. § 5511(a)(1)(i), which states the following:

(a) KILLING, MAIMING OR POISONING DOMESTIC ANIMALS OR ZOO ANIMALS, ETC.—

(1) A person commits a misdemeanor of the second degree if he willfully and maliciously:

(i) Kills, maims or disfigures any domestic animal of another person or any domestic fowl of another person.

■ ¶ 12 Title 18 Pa.C.S.A. § 5511(a)(3) sets forth the following affirmative defenses [6] to prosecution under the statute:

(3) This subsection shall not apply to:

(i) the killing of any animal taken or found in the act of actually destroying any domestic animal [7] or domestic fowl;

(ii) the killing of any animal or fowl pursuant to the act of June 3, 1937 (P.L. 1225, No. 316), known as The Game Law, or 34 Pa.C.S. § 2384 (relating to declaring dogs public nuisances) and 2385 (relating to destruction of dogs declared public nuisances), or the regulations promulgated thereunder[.]

¶ 13 Appellant argues first that 18 Pa. C.S.A. § 5511(a)(3)(i) applies to the present case, and, therefore, he was not guilty of cruelty to animals. We disagree. First, this assertion is belied by the definition of "domestic animal" within the statute. Contrary to Appellant's argument, a wild or semiwild animal in captivity is not a "domestic animal" within the meaning of that term in Section 5511(q) of the cruelty to animals statute. Indeed, a "domestic animal" for purposes of the cruelty to animals statute consists only of the following: (1) any dog or cat; (2) equine animals; (3) bovine animals; (3) sheep; (3) goats; (4) any porcine animal. *See* 18 Pa.C.S.A. § 5511(q). All species of deer are members of the family *cervidae* and, therefore, do not conform to the statutory definition of "domestic animal" in the cruelty to animals statute. Secondly, the facts of this case indicate that the dogs were not found in the act of "actually destroying" the deer. Under our rules of statutory construction, we are to construe words in a statute according to rules of grammar and according to their common and approved usage.

---

6. The question of whether an affirmative defense is applicable in a given case is, in reality, a challenge to the sufficiency of the evidence. *See Commonwealth v. Miller*, 385 Pa.Super. 186, 560 A.2d 229, 234 (1989).

7. The term "domestic animal" is defined by 18 Pa.C.S.A. § 5511(q) as "[a]ny dog, cat, equine animal, bovine animal, sheep, goat or porcine animal."

*See* 1 Pa.C.S.A. § 1903(a). With regard to the phrase "actually destroying any domestic animal," the common and approved definition of the word "destroy" is "to kill; slay." WEBSTER'S ENCYCLOPEDIC DICTIONARY 541 (2nd ed.). The dogs' acts of running along the fence did not kill or destroy the deer, but renders them valueless and unable to be sold.[8] Accordingly, Appellant's argument fails.

■ ¶ 14 Appellant next argues that, pursuant to 18 Pa.C.S.A. § 5511(a)(3)(ii), he should not have been prosecuted for cruelty to animals because he was permitted to kill the dog pursuant to 34 Pa.C.S.A. § 2384 of the Pennsylvania Game and Wildlife Code, and pursuant to 3 P.S. § 459–501 of Pennsylvania's Dog Law.

¶ 15 Title 34 Pa.C.S.A. § 2384 states the following:

> Any dog pursuing or following upon the track of any big game animal [9] in such close pursuit as to endanger the big game animal or to be in the act of attacking the big game animal at any time is hereby declared to be a public nuisance and may be destroyed as provided in this title.[10]

¶ 16 As found by the trial court, this section is inapplicable to the present case. The common definition of the word "pursue" is "to follow in order to capture, overtake, kill, etc." WEBSTER'S ENCYCLOPEDIC DICTIONARY 541 (2nd ed.). In the present case, the dogs were harass-ing the deer by running along the perimeter of the fence of the deer pen, but, as a result of the fence, the dogs could not follow the deer so as to overtake or kill them. Therefore, the dogs were not "in pursuit" of the deer. Likewise, the dogs were not attacking the deer because the deer were at no point in any danger of physical contact with the dogs. The injuries sustained by the deer were the result of them being agitated by the dogs and, thereafter, running against the fence of the deer pen.

■ ¶ 17 Appellant's Dog Law argument fares no better than his argument regarding the Game and Wildlife Code. Title 3 P.S. § 459–501 states the following:

> (a) LEGAL TO KILL CERTAIN DOGS.—Any person may kill any dog which he sees in the act of pursuing or wounding or killing any domestic animal,[11] wounding or killing other dogs, cats or household pets, or pursuing, wounding or attacking human beings, whether or not such a dog bears the license tag required by the provisions of this act. There shall be no liability on such persons in damages or otherwise for such killing.

> (b) PRIVATE NUISANCE.—Any dog that enters any field or enclosure where domestic animals are confined, provided that the enclosure is adequate for the purpose intended,

8. It is noteworthy that Appellant did not seek veterinary care for the deer following the incident.

9. The term "big game" is defined by the Game and Wildlife Code as "... the elk, the whitetail deer, the bear, and the wild turkey." *See* 34 Pa.C.S.A. § 102.

10. Section 2385, 34 Pa.C.S.A., states that "[a] dog declared a public nuisance pursuant to Section 2384 (relating to declaring dogs pub-lic nuisances) may be killed by any commission officer at any time or by any person when the dog is found to be in the act of attacking a big game animal."

11. The Dog Law defines "domestic animal" as "[a]ny equine animal or bovine animal, sheep, goat, pig, poultry, bird, fowl, confined hares, rabbits and mink, or any wild or semi-wild animal maintained in captivity." *See* 3 P.S. § 459–102.

shall constitute a private nuisance, and the owner or tenant of such field, or their agent or servant, may detain such dog and turn it over to the local police authority or State dog warden or employee of the department. While so detained, the dog shall be treated in a humane manner.

(c) LICENSED DOGS NOT INCLUDED.—Licensed dogs, when accompanied by their owner or handler, shall not be included under the provisions of this section unless caught in the act of pursuing, wounding or killing any domestic animal, wounding or killing any dogs, cats or household pets, or pursuing, wounding or attacking human beings.

¶ 18 We begin with the observation that Appellant's deer fall under the definition of "domestic animal" contained within the Dog Law because they are wild or semi-wild animals maintained in captivity. *See* 3 P.S. § 459–102. Nevertheless, we have already concluded that the dogs were not in the act of pursuing, wounding, or killing the deer. Consequently, the affirmative defense set forth at 3 P.S. § 459–501(a) (and adopted by 18 Pa.C.S.A. § 5511(a)(3)) is not applicable to the present case. Further, pursuant to the rules of statutory construction, we are required to give effect to all of the provisions of a statute. 1 Pa.C.S.A. § 1921(a). As explained above, the dogs were not pursuing, wounding, or killing the deer. Instead, the facts of this case indicate that the dogs entered a field where the deer were confined. Accordingly, the facts of this case trigger the applicability of 3 P.S. § 459–501(b), which does not confer upon an individual the right to kill a dog. Consequently, Appellant's argument fails.

¶ 19 Lastly, Appellant argues that the Commonwealth failed to prove that he killed Cujo with malice. Appellant argues unconvincingly that, when construing the animal cruelty statute, this Court should not apply the standard definition of legal malice, *i.e.,* "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty." *Commonwealth v. Hackenberger,* 795 A.2d 1040, 1044 (Pa.Super.2002), *affirmed,* 575 Pa. 197, 836 A.2d 2 (2003). This argument is contrary to the precedent of this Court, and we are not at liberty to overrule that precedent. *Hackenberger,* 795 A.2d at 1044–45 (applying standard definition of legal malice to animal cruelty statute); *see also Commonwealth v. Spease,* 911 A.2d 952, 959 (Pa.Super.2006) (opinions of Superior Court are binding precedent and it must follow them until overruled by either Superior Court sitting *en banc* or by a higher court). Further, we are satisfied that the Commonwealth proved malice in this case. Appellant was not in danger from Cujo when the dog was running along the perimeter of the deer fence, as Appellant was inside his home at that time. However, Appellant retrieved a shotgun, exited his home, trained it on Cujo, and fired. Thereafter, he concealed his killing of Cujo from its owner and the police. These facts were sufficient for the Commonwealth to demonstrate the malice required to obtain a conviction for cruelty to animals. *Hackenberger,* 795 A.2d at 1044–45. Accordingly, Appellant's argument fails.

¶ 20 As Appellant's arguments fail, we affirm the judgment of sentence of the trial court.

¶ 21 Judgment of sentence affirmed.