J-S08038-24

2024 PA Super 90

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON P STEFANOWICZ | : | |
| | : | |
| Appellant | : | No. 1012 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 3, 2023
In the Court of Common Pleas of Tioga County Criminal Division at
No(s):  CP-59-CR-0000096-2021

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: MAY 2, 2024**

Appellant, Jason P. Stefanowicz, appeals from the judgment of sentence entered in the Tioga County Court of Common Pleas. After a careful review, we affirm.

The facts and procedural history are as follows: Appellant and his wife co-own a deer farm, Awesome Whitetails, at their residence. Appellant is legally licensed to operate his farm where he raises and sells trophy bucks which are kept in a fenced-in enclosure on their property. N.T., 2/8/23, at 143. Appellant's neighbor, Ms. Smith, owned two German Shepherd dogs which Appellant testified frequently entered his property and had previously harassed the animals he raises there. N.T. at 117-18. Appellant and his wife submitted a complaint to the state dog warden, Will Yoder. N.T. at 82. Mr. Yoder posted a notice of violation warning on Ms. Smith's door advising her of

---

[*] Former Justice specially assigned to the Superior Court.

the statewide requirements on confining dogs. N.T. at 83. Mr. Yoder also testified that during his conversation with Appellant regarding Ms. Smith's dogs, he advised Appellant of the legal right to kill a dog that is "in the act of pursuing or wounding or killing" Appellant's animals.

On September 27, 2020, Ms. Smith's dogs entered Appellant's property and were barking at and chasing Appellant's deer from outside the fence. Appellant testified that the dogs, while unable to enter the enclosure, had sent the deer into a panic, causing them to run into the fence and each other. N.T. at 146-47. One deer was stuck in the fence and one dog was biting at it. N.T. at 147. Appellant yelled at the dogs to no avail, so he shot each dog once, killing them. N.T. at 147-48.

Appellant called the police and reported that "they had just shot two dogs." N.T. at 46. Pennsylvania State Police Trooper Michael Brown reported to Appellant's property and observed the dead dogs outside of the fenced in area, blood on some fence posts, and bends in the fence wire. N.T. at 56. He also observed a deer with a bloody gash on its nose. N.T. at 58. Appellant testified that he found two more of his deer with bloody faces and one deer was dead with a broken neck after the incident. N.T. at 126, 130.

Ms. Smith was sent a citation in the mail for failure to confine her dogs, to which she pled guilty. N.T. at 112. Appellant was charged with two counts of Aggravated Cruelty to Animals under 18 Pa.C.S.A. § 5534(a)(2), one count for each dog. A jury trial was held February 8, 2023, after which Appellant was convicted of one count. On April 3, 2023, Appellant was sentenced to six

months' probation. On April 13, 2023, Appellant filed a Motion for Dismissal/New Trial. The trial court denied his motion by order dated June 20, 2023. On July 19, 2023, Appellant filed his Notice of Appeal. Appellant filed a Statement of Matters Complained of on Appeal on August 28, 2023. This appeal followed.

Appellant raises five issues in his brief:

1. Whether the evidence presented at trial was insufficient to prove beyond a reasonable doubt that Mr. Stefanowicz illtreated, overloaded, beat, abandoned, or abused an animal?

2. Whether the evidence at trial was insufficient to prove beyond a reasonable doubt that Mr. Stefanowicz intentionally or knowingly violated Section 5532 or Section 5533 as required by the Aggravated Cruelty to Animals statute?

3. Whether the Trial Court abused its discretion by holding that the verdict
was not against the weight of the evidence when the uncontested evidence at trial demonstrated that Mr. Stefanowicz's deer were being pursued, wounded, and/or killed by the dogs thereby permitting him to kill the animals?

4. Whether the Trial Court committed an error of law when it held it was prohibited from considering Mr. Stefanowicz's ineffective assistance of counsel claim related to jury selection on post-verdict motions?

5. Whether Trial Counsel was ineffective for failing to strike a juror for cause, or use a peremptory strike, when it was apparent the juror would not accept the lawful defense Trial Counsel intended to put forward?

Appellant's Br. at 6-7.

Appellant's first two issues challenge the sufficiency of evidence. Our review of challenges to the sufficiency of the evidence is governed by the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001) (citations omitted).

Appellant was convicted under the Aggravated Cruelty to Animal statute, which relevantly states:

A person commits an offense if the person intentionally or knowingly does any of the following:
(1) Tortures an animal.
(2) Violates section 5532 (relating to neglect of animal) or 5533 (relating to cruelty to animal) causing serious bodily injury to the animal or the death of the animal.

18 Pa.C.S.A. § 5534(a)(2).

- 4 -

Section 5533, the Cruelty to Animal statute of which Appellant must first have been found to be in violation, is as follows:

> Cruelty to animal. A person commits an offense if the person intentionally, knowingly or recklessly illtreats, overloads, beats, abandons or abuses an animal.

18 Pa.C.S.A. § 5533(a).

Appellant first argues that his actions did not satisfy the *actus reus* of "illtreats, overloads, beats, abandons or abuses" by shooting and killing the dogs when this Court has previously held that shooting a dog does not constitute "abuse" of an animal. Appellant's Br. at 20. We disagree.

Appellant cites **Commonwealth v. Ulrich**, 726 A.2d 1070 (Pa. Super. 1999). In that case, a neighboring dog engaged in a fight with the appellant's brother's dog. *Id.* at 1071. The brother shot the attacking dog one time but did not kill it. The dog ran in the direction of a stream near where appellant's newborn calves were located. The appellant ran after the dog towards the stream and shot it three times, killing it. *Id.* The appellant was convicted of one count of animal cruelty. *Id.* at 1070. At the time **Ulrich** was decided, the animal cruelty statute read as follows:

> A person commits a summary offense if he wantonly or cruelly illtreats, overloads, beats or otherwise abuses any animal, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care . . . .

*Id.* at 1070 (citing 18 Pa.C.S.A. § 5511(c) (repealed 2017)).

On appeal to this court, we found that the appellant was not charged under the proper statute. We found that his behavior fell squarely under another statute, which made it an offense if one "willfully or maliciously kills, maims, or disfigures any domestic animal of another person." *Id.* (citing 18 Pa.C.S.A. § 5511(a) (repealed 2017)). Specifically, we stated:

> The facts of this case fall squarely under 18 Pa.C.S.A. § 5511(a). Appellant's crime, if any, was his intentional killing of a domestic animal not his own. The crime he was charged with under 18 Pa.C.S.A. § 5511(c), however, is inapplicable because it covers a range of abuses simply not present in this circumstance. Section 5511(c) specifically refers to abuses such as the beating, malnourishment and illtreatment of animals. While killing a dog may be considered the most harmful kind of treatment of an animal, it is not the kind of act § 5511(c) is meant to prohibit.

*Ulrich*, 726 A.2d at 1071. *Ulrich* does not stand for the proposition that the shooting and killing of an animal is not "abuse." The case stands for the proposition that when there is a specific statute intending to prohibit certain behavior, one in violation of the statute ought to be charged and must be convicted under the section that is clearly intended to cover that set of circumstances. We declined to stretch the language of the animal cruelty statute in *Ulrich* and vacated the appellant's sentence because:

> The killing of a domestic animal is a specific crime prohibited by § 5511(a) of the Cruelty to Animals statute. We find, therefore, that Appellant, as a matter of law, should not have been charged with or convicted under 18 Pa.C.S.A. § 5511(c).

*Ulrich*, 726 A.2d at 1071.

Here, we cannot say the same as a matter of law because, since the amending of Title 18 in 2017, the killing of a domestic animal is no longer a

- 6 -

separate crime divorced from the cruelty statute.[1] Instead, the killing of a domestic animal is prohibited by the aggravated animal cruelty statute at issue here. Unlike the animal cruelty statute under which **Ulrich** was convicted, the killing of a dog *is* the kind of act the current statute was meant to prohibit. **See Commonwealth v. Sanchez**, No. 280 MDA 2023, 2024 Pa. Super. Unpub. LEXIS 758 (Mar. 26, 2024)[2] (upholding conviction under section 5534(a)(2) where an appellant was engaging in domestic violence against his girlfriend, held a gun to her head, fired the weapon, and instead struck and killed the girlfriend's dog); **see also Commonwealth v. Julian**, 299 A.3d 916 (Pa. Super. 2023)[3] (upholding a conviction under section 5534(a)(2) where an appellant who was trespassing on private property and was confronted by the property owner's dog shot the dog with a gun, causing the dog injury). Thus, we dismiss Appellant's reliance on **Ulrich** and find that the shooting of a dog is a type of abuse the statute was meant to prohibit.[4]

There was sufficient evidence to convict Appellant of aggravated animal cruelty. In order for Appellant to have been convicted, the jury must have

---

[1] 2017 Pa. ALS 10, 2017 Pa. Laws 10, 2017 Pa. HB 1238.

[2] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find guidance in the unpublished memorandum cited *supra* and find it to be persuasive in this matter.

[3] *Id*.

[4] The trial court below determined that shooting a dog is "abuse" based on the Merriam-Webster dictionary definition "to use or treat so as to injure or damage." Tr. Ct. Op. at 9. *Cf. Abuse,* Oxford Dictionary (defining abuse as to "treat (a person or an animal) with cruelty or **violence**, especially regularly or repeatedly") (emphasis added).

found that Appellant intentionally or knowingly caused the animal's death while in violation of section 5533. To violate section 5533, one must intentionally, knowingly or recklessly illtreat, overload, beat, abandon or abuse an animal. It is undisputed that Appellant acted intentionally when he chose to shoot the dogs on his property. The legislature intended[5]—and this Court has interpreted—the cruelty statute which prohibits "abuse" to cover the conduct of shooting an animal. There is also no dispute that Appellant's shooting the animals caused their death. Therefore, Appellant's sufficiency claims as to the *actus reus* and *mens rea* fail.

Appellant next challenges the weight of the evidence. Appellant claims that because uncontested evidence satisfies the legal defense permitting the shooting and killing of certain dogs, the verdict was against the weight of the evidence. Appellant's Br. at 25.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an

---

[5] **See** Rep. Ryan A. Bizzarro, Pa. H.B. 13 Co-Sponsorship Memorandum, H. 201, 1st Sess. (December 2, 2016), https://www.legis.state.pa.us//cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=H&SPick=20170&cosponId=21024 (stating that the legislature was amending Title 18 to make penalties harsher on people who harm animals); **see also** S. Appropriations Comm., Fiscal Note, Pa. HB1238 (June 19, 2017), https://www.legis.state.pa.us/WU01/LI/BI/SFN/2017/0/HB1238P1565.pdf (stating that the new animal cruelty statute (section 5533) is meant to prevent conduct that places an animal at "*imminent risk*" of serious bodily injury). Firing a gun at an animal is inherently putting the animal at imminent risk of serious bodily injury, or here, death, and is therefore within the range of abuses covered by section 5533.

appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Widmer***, 744 A.2d at 745, 753 (Pa. 2000) (internal citations omitted).

The legal defense in Pennsylvania that permits one to kill a dog in certain circumstances is as follows:

> LEGAL TO KILL CERTAIN DOGS.— Any person may kill any dog which he sees in the act of pursuing or wounding or killing any domestic animal, wounding or killing other dogs, cats or household pets, or pursuing, wounding or attacking human beings, whether or not such a dog bears the license tag required by the provisions of this act. There shall be no liability on such persons in damages or otherwise for such killing.

3 P.S. § 459-501(a). Appellant's deer are considered "domestic animals" for purposes of this statute. ***See*** 3 P.S. § 459-102 (stating that a domestic animal is "[a]ny equine animal or bovine animal, sheep, goat, pig, poultry, bird, fowl, confined hares, rabbits and mink, or any wild or semiwild animal maintained in captivity.").[6]

Appellant maintains that because he and his wife testified that they saw the dogs in the act of pursuing and wounding their deer, and because there

---

[6] Both parties and the trial court acknowledge that the deer are considered "domestic animals" for purposes of this defense. N.T., 2/8/23, at 185; Tr. Ct. Op. at 7; Appellant's Br. at 26; Appellee's Br. at 13. The jury was instructed that "domestic animals" under this law include those historically found in the wild such as bison, deer, and elk. N.T. at 185.

was no testimony to the contrary, that Appellant had the legal right to kill the dogs and thus the jury's verdict convicting him of aggravated animal cruelty was against the weight of the evidence. Appellant's Br. at 26. Additionally, Appellant argues that the trial court's reliance on **Commonwealth v. Ingram**, 926 A.2d 470 (Pa. Super. 2007), to determine that the verdict was not against the weight of the evidence was in error because that case is distinguishable.  Appellant's Br. at 26-27.

**Ingram** shares facts similar to the instant case. There, the appellant had a deer farm and complained various times that two neighborhood dogs were harassing his deer. **Ingram**, 926 A.2d at 472. One day when the dogs entered the appellant's property harassing the deer, the deer became agitated, so the appellant's wife went outside to see what was occurring. **Id**. The dogs then ran towards her barking, so she went back inside and told appellant what happened. The appellant procured a shotgun and shot both dogs, killing one and injuring the other. **Id**. Appealing his animal cruelty conviction, the appellant argued that his conduct satisfied the defense making it legal to kill certain dogs. We held that the section was inapplicable to the present case because

> the dogs were harassing the deer by running along the perimeter of the fence of the deer pen, but, as a result of the fence, the dogs could not follow the deer so as to overtake or kill them. Therefore, the dogs were not "in pursuit" of the deer. Likewise, the dogs were not attacking the deer because the deer were at no point in any danger of physical contact with the dogs. The injuries sustained by the deer were the result of them being agitated by the dogs and, thereafter, running against the fence of the deer pen.

- 10 -

*Id.* at 475.

With this background, the trial court in the instant case advised the jury as follows:

> the law further provides that this defense is applicable where a person catches the animal in the act of actually pursuing, wounding, or killing an animal, if there is direct contact and injury. I will advise you that, under the laws of this Commonwealth, harassing an animal through a fence without any contact does not constitute pursuing, wounding, or killing an animal. There must be the ability to have contact and actual contact and injury to the animal for this defense to apply. . . . If he has proven that one -- or as to the second count, both dogs were actually in the act of killing, wounding, or pursuing these animals, and you believe that and accept that by preponderance of the evidence, then the defense would apply.

N.T., 2/8/23, at 185-86.

While there was no claim made in *Ingram* that the dogs ever made physical contact with the deer, and thus the defense was inapplicable, there was testimony in the instant case that there was physical contact between at least one deer and one dog. We acknowledge that it is a factual possibility that a dog could pursue or wound another animal or person through a fence or barrier, especially a wire fence with large openings. The trial court would have been in error if it instructed the jury, in light of Appellant's claims that there was direct contact and injury by the dogs through the fence, that *Ingram* stands for the proposition that there is no circumstance where killing a dog separated from an animal or human by a fence is justified. Instead, the trial court properly told the jury that it had to believe actual contact and injury

occurred through the fence in order for the defense to apply. The jury proceeded to convict Appellant of one count of aggravated animal cruelty.

The trial court did not abuse its discretion in denying a new trial because the jury could have found the defense applies as to his killing of one of the dogs but not the other. The defense requires that Appellant saw the dogs in the act of pursuing, wounding or killing his animals. Appellant testified that both dogs were running around the enclosure and that he saw one dog biting a deer caught in the fence. N.T. at 147. There was no evidence presented that Appellant saw the second dog biting any deer, so the jury could have reasonably believed that the second dog was not in the act of pursuing, wounding, or killing any deer when Appellant shot it.

Additionally, Appellant's testimony conflicted with that of the other witnesses at times. Appellant's wife testified that Ms. Smith's dogs entered their property twenty or thirty times and harassed their animals fifteen to twenty times, N.T. at 117-18, while Appellant testified that the dogs entered his property "every single day." N.T. at 145. While Appellant testified that his wife complained to Ms. Smith fifteen or twenty times, N.T. at 154, Appellant's wife testified that she never called to complain to Ms. Smith about the dogs and instead called the dog warden. N.T. at 134-35. She indicated that the dog warden should have twenty or thirty reports documenting these calls, N.T. at 135, but the dog warden only testified to receiving a single 2019 complaint. N.T. at 87-88. The jury was free to draw inferences from any inconsistencies and to believe or disbelieve any testimony. Thus, we will not disturb the lower

- 12 -

court's determination that the verdict was not against the weight of the evidence.

Appellant's final issues relate to ineffective assistance of counsel. During *voir dire*, Juror #15 had the following exchange with Appellant's trial counsel:

Attorney Banik: Good morning, all. It's my pleasure to represent Jason Stefanowicz in this matter. He is the farmer - a deer farmer - and he had a problem with some neighbor dogs. Is there anybody here who has a problem with making a decision on whether or not someone can put a dog down in certain circumstances?
. . .
[Juror] #15: []. I'm a dog owner and I just feel that if my dog were on somebody else's property I would hope that they would call the authorities and not take it in their own hands because I'd do the same as a property owner.

Attorney Banik: Do you believe that you can put your concerns aside if there were extenuating circumstances?

[Juror] #15: If it were attacking a human being than maybe something could be taken in my own hands, but other than that I feel it should be handled by the warden.

N.T., 2/8/23, at 16-17.

Appellant's trial counsel did not strike Juror #15 and she was empaneled on the jury. When the Court asked trial counsel if this was the jury he selected, counsel responded:

Attorney Banik: Your Honor, I forgot - I missed a strike, but I guess it's too late to do anything about it.

The Court: Alright. Well –

Attorney Banik: - other than that it's the jury we selected, erroneous as though it may be.

The Court: This is the jury you selected, correct?

- 13 -

Attorney Banik: That's correct.

The Court: Okay. Very well...

N.T., 2/8/23, at 20-21.

Appellant argues that the juror his trial counsel must have been referring to was Juror #15, and that the failure to strike her was ineffective assistance and was not based in strategy. Appellant's Br. at 15. Appellant argues that the fact that he shot and killed both dogs but was only convicted of one count of animal cruelty is proof that Juror #15 voicing her convictions led the jury to a compromise on "split[ting] the proverbial baby." Appellant's Br. at 32-33. The trial court declined to address this issue stating:

> Claims of Ineffective Assistance of Counsel are not typically permitted on direct appeal. . . . As Appellant's appeal does not include such a waiver of his PCRA rights, any claims of Ineffective Assistance of Counsel are not subject to review on this direct appeal . . . .

Tr. Ct. Op. at 3. Appellant now submits that the trial court erred in not addressing this claim and asks us to address the claim on direct appeal. Except in limited, identified circumstances, "claims of ineffective assistance of counsel are to be deferred to PCRA review." **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013). However, we agree with Appellant that the trial court erred in not addressing his ineffective assistance of counsel claim in this case.

> Three exceptions have been recognized to the general rule that ineffective assistance claims may not be raised in a direct appeal: (i) in "extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record

and meritorious to the extent that immediate consideration best serves the interests of justice"; (ii) where the defendant asserts multiple ineffective assistance claims, shows good cause for direct review of those claims, and expressly waives his entitlement to PCRA review before the trial court; and (iii) "where the defendant is statutorily precluded from obtaining subsequent PCRA review."

*Commonwealth v. Rosenthal*, 233 A.3d 880, 887 (Pa. Super. 2020) (citing *Commonwealth v. Delgros*, 183 A.3d 352, 360-61 (Pa. 2018); *Holmes*, 79 A.3d at 563-64).

Appellant satisfies the third exception that he is statutorily precluded from obtaining subsequent PCRA review. In order to be eligible for PCRA relief, the petitioner must plead and prove that he "has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted . . . currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S.A. § 9543(a)(1)(i). Here, Appellant was sentenced to six months' probation on April 3, 2023. Thus, Appellant is no longer "currently serving a sentence of probation" for his sole conviction. Since Appellant would be ineligible for subsequent PCRA review of his ineffectiveness claim, consideration of his claim on direct appeal is warranted. *See Delgros*, 183 A.3d at 361.

> As the starting point for our review of any ineffectiveness claim, we presume that counsel is effective. *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (Pa. 1993). In order to overcome this presumption and establish that counsel was indeed ineffective, an appellant must establish three points. First, Appellant must show that the underlying claim is of arguable merit. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (Pa. 1995). Second, Appellant must prove that counsel's action or inaction was not grounded on any reasonable basis. *Id*. In determining whether counsel's action was reasonable, we do not question

- 15 -

whether there were other more reasonable courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987). Finally, Appellant must establish that "but for the act or omission in question, the outcome of the proceedings would have been different." ***Travaglia***, 661 A.2d at 357. "If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." ***Id***.

***Commonwealth v. Porter***, 728 A.2d 890, 895-96 (Pa. 1999).

Appellant argues that Juror #15's response to counsel's question is tantamount to her unequivocally stating that she could not be unbiased in this case. He further argues that his inconsistent verdict—the fact that he shot and killed both dogs but was only convicted of one out of the two counts of animal cruelty charged—proves that Juror #15 caused the jury to be unable to agree on a verdict. Appellant's Br. at 32-33. Had his trial counsel exercised a strike on Juror #15, he asserts there is a probability that the result would have been different. Appellant's Br. at 33. We disagree.

Appellant speculates that Juror #15 is the juror his trial counsel forgot to strike, but even accepting that assertion *arguendo*, Appellant cannot establish the probability of a different result. If Juror #15 deliberated based on a belief that a person could only ever justly kill a dog if it was attacking a human, she would have been inclined to convict on both counts. Appellant was charged with two counts of aggravated animal cruelty, raised a legal defense as to both, and was convicted of one count. The jury could have found the defense applied as to one of the dogs—the one that Appellant testified he

saw biting the deer's face—and that a conviction was proper as to the other dog that was running around and not engaging in direct contact with any deer. Thus, we conclude that Juror #15's placement on the jury did not prejudice Appellant. Accordingly, we affirm. While we uphold the jury's verdict in this fact specific case based on our reasoning *infra*, we urge the legislature to clarify its intent and define the word "abuse" in the animal cruelty statute.

Judgment of sentence affirmed.

Judge Murray joins the opinion.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/2/2024