J-S24025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
ROBERT TJ EASLEY   :
  :
Appellant   :   No. 1267 WDA 2024

Appeal from the Judgment of Sentence Entered June 3, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002431-2022

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: NOVEMBER 5, 2025**

Robert TJ Easley appeals from the judgment of sentence entered on his convictions for persons not to possess firearms, receiving stolen property, possession of a controlled substance, and possession of drug paraphernalia.[1] Easley argues his firearms conviction is unconstitutional and that the court erred in refusing to consider his ineffectiveness claims. We affirm.

The charges arose after law enforcement officers, who were investigating a missing person, encountered Easley in a hotel room. Easley possessed a stolen firearm at the time. Law enforcement also recovered marijuana and drug paraphernalia from the room.

Easley was ineligible to possess a firearm under Section 6105 of the Crimes Code due to his two prior felony convictions in the state of Michigan

---

[1] **See** 18 Pa.C.S.A. §§ 6105(a)(1), 3925(a); 35 P.S. § 780-113(a)(16), (a)(32).

for an offense equivalent to receiving stolen property.[2] Easley had been convicted once of receiving a stolen vehicle, and once of receiving a stolen firearm.

After the jury found Easley guilty, the court sentenced him to an aggregate of four to 10 years' incarceration, followed by 12 months of probation. Easley filed post-sentence motions, including claims of trial counsel ineffectiveness and a constitutional challenge to his firearms conviction. The trial court denied the motions. This appeal followed.

Easley raises the following issues:

1. Whether the court below erred in denying [Easley's] constitutional challenge to 18 Pa.C.S. § 6105(a)(1)?

2. Whether the court below erred in denying [Easley] an opportunity to litigate ineffective assistance of counsel claims through post-sentence motions?

Easley's Br. at 7 (suggested answers omitted).

Easley first argues that the persons not to possess firearms statute – Section 6105 – is both facially unconstitutional and unconstitutional as applied to him. He asserts that the section of the statute that prohibits persons twice convicted of receiving stolen property, or an equivalent offense, from possessing firearms, violates the Second Amendment because it applies to persons who committed property crimes, rather than violent offenses. Easley argues that Second Amendment jurisprudence – most notably ***United States v. Rahimi***, 602 U.S. 680 (2024) – only allows for restrictions on firearm

_____

[2] ***See*** 18 Pa.C.S.A. §§ 3925, 6105(b).

possession by persons shown to be violent, in accordance with historical, traditional firearms restrictions. Easley contends "[t]here is no historical analog at the founding of our nation for convicting someone of possessing a firearm illegally when the underlying predicate offense is merely a property offense[.]" *Id.* at 16-17. Easley also maintains Section 6105 is unconstitutional as applied to him, because he "has not committed a crime of violence." *Id.* at 15.

The constitutionality of a statute presents a pure question of law. *Commonwealth v. Brooker*, 103 A.3d 325, 334 (Pa.Super. 2014). As such, our standard of review is *de novo* and our scope of review is plenary. *Id.*

The Second Amendment of the United States Constitution states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.C.A. Const. Amend. II.

Section 6105(a)(1) of the Pennsylvania Crimes Code restricts persons from possessing, using, manufacturing, controlling, selling, or transferring firearms, if they have been previously convicted of certain offenses. *See* 18 Pa.C.S.A. § 6105(a)(1).[3] Subsection (b) enumerates the predicate offenses,

---

[3] Section 6105(a)(1) states,

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence . . . shall not possess, use, control, sell,

*(Footnote Continued Next Page)*

including the theft offense at issue here: "Section 3925 (relating to receiving stolen property) upon conviction of the second felony offense." *Id.* at § 6105(b). Section 3925, in turn, provides that the offense of receiving stolen property is to be graded as a felony only in certain situations, including when the stolen property is an automobile or firearm. *See id.* at § 3903(a)(3), (a.1). Subsection (b) of Section 6105 also includes, as a predicate offense, "[A]ny offense equivalent to any of the above-enumerated offenses under the statutes of any other state or of the United States." *Id.* at § 6105(b).

Importantly, subsection (d) allows a person subject to the statute to apply to the Court of Common Pleas for relief, including when "[a] period of ten years, not including any time spent in incarceration, has elapsed since the most recent conviction of the applicant of a crime enumerated in subsection (b)." *Id.* at § 6105(d)(3)(ii). Section 6105.1 further outlines the procedure for restoration of firearms rights, and provides for a hearing in open court and a judicial determination as to whether "the applicant's character and reputation is such that the applicant would be likely to act in a manner dangerous to public safety." *See id.* at § 6105.1(a)(3); *see also* § 6105(e)(1).

Here, Easley argues that by including receiving stolen property (and its out-of-state equivalent) as a predicate offense, Section 6105(a) and (b) are

---

transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A § 6105(a)(1).

both facially unconstitutional and unconstitutional as applied to him.[4] We disagree.

We will first consider Easley's as-applied challenge. Our analysis is guided by the following. In ***New York State Rifle & Pistol Assoc. v. Bruen***, 597 U.S. 1 (2022), the Supreme Court of the United States held that a two-part analysis applies to a challenge brought under the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.[5]

The first part of the test requires the court to determine whether the Second Amendment applies to the legislated conduct, *i.e.*, whether the challenged legislation infringes "the right of the people to keep and bear arms." This Court has already determined that convicted felons are included in "the people" to whom the Second Amendment's protections apply. ***See Commonwealth v. Randolph***, No. 487 WDA 2024, --- A.3d ---, 2025 WL

---

[4] Easley restricts his argument to the Second Amendment of the United States Constitution.

[5] The Court declined to adopt the use of means-end scrutiny in its consideration of Second Amendment challenges. ***Bruen***, 597 U.S. at 17.

2166516, at *7 (Pa.Super. filed July 31, 2025).[6] We have also held the Second Amendment covers the application of Section 6105(a)(1). ***Id.***

The second part of the test then requires the Commonwealth to present an historical analogue to the challenged statute to show that it "is consistent with this Nation's historical tradition of firearm regulation." ***Bruen***, 597 U.S. at 34; ***see also id.*** at 30 (stating government must "identify a well-established and representative historical analogue") (emphasis removed); ***Barris v. Stroud Twp.***, 310 A.3d 175, 208 (Pa. 2024).[7] The challenged regulation need not be a "dead ringer for historical precursors" or the "historical twin" of a previous statute but must "be analogous enough to pass constitutional muster." ***Bruen***, 597 U.S. at 30. To make this determination, a court must consider, at least, "how and why the regulations burden a law-abiding citizen's right to armed self-defense." ***Id.*** at 29.

---

[6] In ***Randolph***, we noted a conflict between two of our previous decisions on the matter: ***Commonwealth v. Farmer***, 329 A.3d 449 (Pa.Super. 2024), *appeal granted*, No. 44 MAL 2025, 2025 WL 1873446 (Pa. July 8, 2025), and ***Commonwealth v. McIntyre***, 333 A.3d 417 (Pa.Super. 2025). We found ourselves bound by ***Farmer***, as it was the earlier decision and had not been overruled by ***McIntyre***. ***Randolph***, 2025 WL 2166516, at *7 n.4. ***See also Range v. Att'y Gen.***, 124 F.4th 218, 228 (3d Cir. 2024) (rejecting the argument that the Second Amendment does not apply to persons who have been convicted of crimes).

[7] ***See also Commonwealth v. Anderson***, No. 1370 EDA 2022, 2024 WL 5205507 at **5 (Pa.Super. filed Dec. 24, 2024) (unpublished mem.) (placing burden on Commonwealth). This burden-shifting regime differs from that applicable to other constitutional standards under which the party "challenging the constitutionality of a statute [must] demonstrate that it clearly, plainly, and palpably violates the constitution." ***Commonwealth v. Omar***, 981 A.2d 179, 185 (Pa. 2009).

Last year, in ***Rahimi***, the United States Supreme Court considered a federal law that prohibited a person subject to a domestic violence restraining order from possessing firearms if the order included a judicial finding that the person "represents a credible threat to the physical safety" of their partner or their partner's child. ***Rahimi***, 602 U.S. at 685. The Court reviewed founding-era surety and "going armed" laws, and determined that "[s]ince the founding," disarmament laws have applied to those individuals "found to pose a credible threat to the physical safety of others." ***Id.*** at 690. The Court also observed that the federal statute imposed only a temporary disarmament. ***Id.*** at 699. The Court noted that surety bonds were of limited duration and the going arms laws provided for imprisonment, and concluded that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament . . . is also permissible." ***Id.*** at 682.

While the Court rejected the argument that the government could disarm the appellant based on a vague assertion that he was not "responsible," ***id.*** at 701-02, it clarified it did "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." ***Id.*** at 698. The Court also reiterated its view that "many . . . prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" ***Id.*** (quoting ***District of Columbia v. Heller***, 554 U.S. 570, 626, 627 n.26 (2008)).

Thus, contrary to Easley's argument, while **Rahimi** was centered on whether certain historical analogues support the disarmament of previously-violent individuals, it acknowledged that this was not the only traditional, historical reason for disarmament, as the legislature could also identify classes of persons thought "to present a special danger of misuse." **Id.** Moreover, it reaffirmed that restrictions on firearm possession by convicted felons, as such a class, remain presumptively constitutional.

Following **Rahimi**, this Court decided **Commonwealth v. Jenkins**, 328 A.3d 1076 (Pa.Super. 2024), *appeal granted*, No. 18 MAL 2025, 2025 WL 1874050 (Pa. July 8, 2025), and **Randolph**. In **Jenkins**, we upheld Section 6105(c)(1), which disarms fugitives. 328 A.3d at 1094. In **Randolph**, we upheld Section 6105(c)(2), which disarms persons convicted of felonious drug trafficking. 2025 WL 2166516, at *10. While our holding in both cases was premised on whether such persons were perceived to pose a credible threat to the safety of others, in neither case did we proclaim that a predicate felony offense must be a violent one to justify disarmament by the legislature. Rather, we observed that there is historical precedent for the legislature's disarmament of certain classes of individuals, irrespective of an established, individualized risk of violence:

> As numerous courts have recounted in their opinions, categories of people have historically been disarmed despite not having actually engaged in violent behavior. **See, e.g.,** [**United States v.**] **Jackson**, 110 F.4th [1120,] 1126-27 [(8th Cir. 2024)] (discussing colonial regulations that prohibited certain classes of persons from owning firearms, such as those who fail to swear a

loyalty oath); *see also Jenkins*, 328 A.3d 1092 (highlighting firearms prohibitions relating to sureties and vagrants).

*Randolph*, 2025 WL 2166516 at *9.

Here, the Commonwealth does not specifically argue that Easley's criminal history proves he poses a credible threat to the safety of others. Rather, the Commonwealth asserts that restricting firearms possession by those specifically convicted of felony theft is rooted in our Nation's history and tradition. It directs us to the Fifth Circuit's decision in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert denied*, 145 S.Ct. 2822 (June 23, 2025).

In *Diaz*, the Fifth Circuit noted that at the time of the Founding, the crime of theft was considered a felony, and that the country has a historical tradition of severely and permanently punishing those convicted of theft, including by capital punishment. 116 F.4th at 468-69. It further noted that "[i]mposing permanent disarmament as punishment" is a punishment "within our Nation's history and tradition," and that, at the Founding, "the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* at 470, 471. The Fifth Circuit sanctioned the federal statute punishing felony theft through disarmament, as this is a less severe punishment than capital punishment. It relied on the Supreme Court's pronouncement in *Rahimi* that, "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament . . . is also permissible." *Id.* at 469 (quoting *Rahimi*, 602 U.S. at 699).

While we find **Diaz** persuasive, we find the thorough analysis provided by the Honorable Cheryl Ann Krause's concurrence in the Third Circuit's **Range** decision more apt here. **See Range**, 124 F.4th at 250-85 (Krause, J., concurring).[8] The majority in **Range** found the federal felon-in-possession law unconstitutional as applied to a person who had previously pleaded guilty to one felony count for making a false statement on a food stamp application. **See Range**, 124 F.4th at 231. The majority found the government failed to present evidence that the appellant "poses a physical danger to others or that food-stamp fraud is closely associated with physical danger," and vacated his firearms conviction. **Id.** at 230.

In her concurrence, Judge Krause rejected the majority's conclusion that the federal statute was not consistent with historical analogues. Judge Krause reviewed English, colonial, revolutionary-war, and antebellum era laws that categorically disarmed entire classes of people. These included laws disarming members of certain groups, including religious and political groups, because it was believed that such classes of persons could not be trusted to obey the law. **Id.** at 255-66. While Judge Krause rejected the bigotry inherent in laws presuming criminal propensity based on race or religion, she emphasized they nonetheless demonstrated "the tradition of categorial, status-based disarmaments." **Id.** at 257 n.29; **see also id.** at 266 n.92.

---

[8] Judge Krause was joined by Judge Roth.

Judge Krause noted that more recently, states have disarmed other broad classes, including persons under the age of 18 or 21, "vagrants," "drunks," and "the mentally ill." *Id.* at 266. Like the earlier laws, those laws "show that legislatures were empowered to disarm entire groups based on prevailing judgments about which categories of people posed 'a special danger of [misusing]' firearms." *Id.* at 267 (quoting *Rahimi*, 602 U.S. at 698). Judge Krause also observed that nearly all of the historical examples she cited provided a mechanism whereby the person affected could rebut the presumption that they pose any individual danger of misusing firearms.

Judge Krause also reviewed colonial-era punishments for felony convictions, including non-violent felonies, and found permissible punishments often included the death penalty or estate forfeiture (and thus, firearm forfeiture). *Id.* at 268. Other laws disarmed people convicted of lesser crimes. *Id.* at 268-69. While some jurisdictions did away with the death penalty for non-violent felonies, "they continued to exercise their authority to permanently punish non-violent felons," including through life imprisonment. *Id.* at 270-71. Some laws enacted after the Founding also deprived those convicted of non-violent crimes of fundamental rights, including the right to bear arms. *Id.* at 271-73. Judge Krause also noted that *Rahimi* instructs that "the availability of a greater penalty for an analogous offense at the Founding implies that a lesser penalty is constitutional today." *Id.* at 251.

Judge Krause's historical analysis led her to conclude that "[t]he Founding generation understood that felons—who could be sentenced to death

or life imprisonment, stripped of their fundamental rights, including their right to arms," were as a group " presumed to pose a special risk of misusing arms." *Id.* at 273 (footnote omitted). She observed that, in disarming felons, the current federal felon-in-possession law was directed at those convicted of committing the crimes "deemed most serious by modern-day legislatures in their respective jurisdictions," and was enacted because "Congress obviously determined that firearms must be kept away from felons[,] because they belong to a class who might be expected to misuse them." *Id.* at 274 (cleaned up).[9]

Judge Krause nonetheless agreed with the majority that the appellant's firearms conviction was unconstitutional – not because the federal statute categorically disarmed even non-violent felons, but because, unlike the

_____

[9] Other circuits have similarly held that disarmament of felons, as a class, is constitutional, and have refused to draw a distinction between violent and non-violent predicate felony convictions. *See United States v. Hunt*, 123 F.4th 697, 707-08 (4th Cir. 2024) (concluding, under the second step of the *Bruen* test, that because felons "have 'demonstrated disrespect for legal norms of society,' the legislature has determined that 'the category as a whole present[s] an unacceptable risk of danger if armed,'" and therefore any felony conviction can support disarmament; stating, "Just as early legislatures retained the discretion to disarm categories of people because they refused to adhere to legal norms in the pre-colonial and colonial era, today's legislatures may disarm people who have been convicted of conduct the legislature considers serious enough to render it a felony"), *cert denied*, 145 S. Ct. 2756 (2025); *Jackson*, 110 F.4th at 1125, 1127 (rejecting the "need for felony-by-felony litigation regarding the constitutionality" of the federal felon-in-possession law; noting the "historical record suggests that legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms, not merely to address a person's demonstrated propensity for violence").

historical analogues, it did not allow dispossessed felons to "have a meaningful opportunity, after successfully serving [their] sentence[s], to show that the burden should be lifted based on individualized findings." *Id.* at 252 (footnote omitted); *see also id.* at 275. Judge Krause found that although the federal statute contains a mechanism for individual relief, it is not "meaningfully available" unless a felon receives a rare expungement or pardon. *Id.* at 276. Judge Krause concurred in vacating the appellant's conviction, finding that, in spending over 30 years since his theft offense in which he committed only minor infractions, he had rebutted the presumption that as a convicted felon he poses a special risk of firearm misuse. *Id.* at 277.

Here, Section 6105(a)(1) restricts Easley from possessing a firearm on the basis that he has been twice convicted of felony theft. This law, like its federal counterpart which Judge Krause analyzed in *Range*, recognizes that felons, as a class, presumptively pose a heightened risk of danger. The historical analogues Judge Krause identified establish that the legislature has the authority both to identify such classes of persons and to preemptively disarm them, regardless of whether they have been shown to be violent.

Moreover, unlike the defect Judge Krause found in the federal statute, Pennsylvania law provides a viable mechanism for those who have been disarmed to seek to regain firearm rights. *See* 18 Pa.C.S.A. §§ 6105(d), 6105.1. We have previously noted that this renders Section 6105 "less restrictive than some of the historical laws that permanently disarmed

individuals without any conviction simply because they belonged to a certain class." *See Randolph*, 2025 WL 2166516, at *10.

The General Assembly's determination that those twice convicted of receiving stolen property, graded as a felony, should be disarmed, with an opportunity to regain firearm rights under certain conditions, fits comfortably within our nation's history and tradition of firearms regulation. We thus find no as-applied Second Amendment violation. As Easley's as-applied challenge fails, so does his facial challenge. *See Randolph*, 2025 WL 2166516 at *11 ("Since we have already concluded that § 6105 is constitutional as applied to [the a]ppellant, his facial challenge cannot succeed because he has not demonstrated that no set of circumstances exists under which the [statute] would be valid") (internal quotation marks and citation omitted).[10]

Finally, Easley argues the court erred in refusing to allow him to litigate his claims of trial counsel ineffectiveness. He argues that counsel was ineffective in:

> a. Failing to request and/or argue for a coercion/voluntariness instruction with respect to [Easley's] statement to police;
>
> b. Failing to introduce and/or offer as an exhibit the inventory in which the allegedly stolen firearm was absent/not listed;
>
> c. Failing to review [Easley's] prospective testimony and/or prepare [Easley] to testify at the trial; and

---

[10] As Judge Roth pointed out in her concurrence in *Range*, *Rahimi* and *Bruen* "have blurred the lines between facial and as-applied challenges under the Second Amendment." *Range*, 124 F.4th at 285.

d. Failing to object to prejudicial evidence relating to the juvenile female.

Easley's Br. at 21.

Easley acknowledges his ineffectiveness claims "will require development of a record, including testimony of Mr. Easley's trial counsel, as to why certain tactical decisions were made." *Id.* at 22. Nonetheless, he claims the shortness of his sentence constitutes good cause for unitary review. He maintains it would be "unjust for [him] to be forced to serve virtually all of his prison sentence before the [c]ourt reaches his claim of ineffective assistance of counsel." *Id.* at 23. Easley points out that he has already completed two and a half years of his sentence, and if he is forced to wait until the conclusion of his direct appeal to file a Post Conviction Relief Act ("PCRA") petition, he may have already completed his minimum four-year sentence.

Ineffective assistance of counsel claims are generally foreclosed until collateral review, when the defendant may advance them in a PCRA petition. *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013). However, in some circumstances, a defendant may advance such a claim in post-sentence motions and direct appeal, a process referred to as "unitary review." *Id.* at 564 n.2. The trial court may entertain the claims in the following situations:

> (i) in extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice;
>
> (ii) where the defendant asserts multiple ineffective assistance claims, shows good cause for direct review of those claims, and

expressly waives his entitlement to PCRA review before the trial court; and

(iii) where the defendant is statutorily precluded from obtaining subsequent PCRA review.

***Commonwealth v. Stefanowicz***, 315 A.3d 162, 172 (Pa.Super. 2024) (cleaned up).

Easley asserts the length of his sentence constitutes good cause for unitary review. Regarding "good cause," we have stated that a defendant may assert good cause based on the short length of his sentence, in which case "the trial court is obligated to pay particular attention to the length of the sentence imposed and the effect the length of the sentence will have on the defendant's realistic prospect to be able to avail himself of collateral review." ***Commonwealth v. Bieber***, 283 A.3d 866, 874 (Pa.Super. 2022) (internal quotation marks and citation omitted). Whether to allow unitary review is within the discretion of the trial court. ***Commonwealth v. Delgros***, 183 A.3d 352, 360 (Pa. 2018).

Here, the trial court found Easley failed to present good cause to justify unitary review, because the length of his sentence would not foreclose his ability to raise ineffectiveness claims on collateral review via a PCRA petition. This was not an abuse of discretion. Easley is serving a 10-year sentence imposed in June 2024. The time remaining on Easley's sentence is not so short as to afford him no realistic chance of seeking PCRA relief. ***See Bieber***, 283 A.3d at 875.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/5/2025